1  Caroline N. Mitchell (#143124)
   Stacy Monahan (#218942)
2  JONES DAY
   555 California Street, 26th Floor
3  San Francisco, CA 94104
   Telephone:    (415) 626-3939
4  Facsimile:    (415) 875-5700
   Email: cnmitchell@jonesday.com
5  Email: smonahan@jonesday.com

6  Attorneys for Plaintiffs

7

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12

13

14  **PATRICK M. MCCOLLUM; IAN**          Case No. C-04-3339 CRB
    **SHAYNE DUNCAN; JOSEF**
15  **MICHAEL JENSEN; KENNETH E.**        **SECOND AMENDED COMPLAINT AND**
    **CAPOGRECO; DONNIE DACUS;**          **CLASS ACTION FOR CIVIL RIGHTS**
16  **SCOTT FORREST COLLINS; KEVIN**      **VIOLATIONS, PERMANENT**
    **COY ILOFF; DAVID SPOONER; and**     **INJUNCTION, DECLARATORY**
17  **GREGORY L. MOURLAND,**              **JUDGMENT, AND DAMAGES**
    **individually and on behalf of all others**
18  **similarly situated**

19                                        **DEMAND FOR JURY TRIAL**

20          **Plaintiffs,**

21       **v.**

22  **CALIFORNIA DEPARTMENT OF**
    **CORRECTIONS AND**
23  **REHABILITATION; OFFICE OF**
    **COMMUNITY RESOURCES;**
24  **CALIFORNIA STATE PERSONNEL**
    **BOARD; AVENAL STATE PRISON;**
25  **CALIFORNIA CORRECTIONAL**
    **CENTER; CALIFORNIA**
26  **CORRECTIONAL INSTITUTION;**
    **CALIFORNIA INSTITUTION FOR**
27  **MEN; CALIFORNIA INSTITUTION**
    **FOR WOMEN; CALIFORNIA MEN'S**
28  **COLONY; CALIFORNIA MEDICAL**

1   FACILITY; CALIFORNIA
    REHABILITATION CENTER;
2   CALIFORNIA STATE PRISON, LOS
    ANGELES COUNTY; CALIFORNIA
3   STATE PRISON, SACRAMENTO;
    CALIFORNIA STATE PRISON,
4   SOLANO; CALIFORNIA SUBSTANCE
    ABUSE TREATMENT FACILITY
5   AND STATE PRISON AT
    CORCORAN; CALIPATRIA STATE
6   PRISON; CALIFORNIA STATE
    PRISON, CENTINELA;
7   CHUCKAWALLA VALLEY STATE
    PRISON; CORCORAN STATE
8   PRISON; CORRECTIONAL
    TRAINING FACILITY; DEUEL
9   VOCATIONAL INSTITUTION;
    FOLSOM STATE PRISON; HIGH
10  DESERT STATE PRISON;
    IRONWOOD STATE PRISON; MULE
11  CREEK STATE PRISON; NORTH
    KERN STATE PRISON; PELICAN
12  BAY STATE PRISON; PLEASANT
    VALLEY STATE PRISON; R.J.
13  DONOVAN CORRECTIONAL
    FACILITY AT ROCK MOUNTAIN;
14  SALINAS VALLEY STATE PRISON;
    SAN QUENTIN STATE PRISON;
15  VALLEY STATE PRISON FOR
    WOMEN; WASCO STATE PRISON;
16  KATHY MENDOZA-POWERS;
    KATHLEEN PROSPER; WILLIAM
17  SULLIVAN; M.E. POULOS; DAWN
    DAVISON; JOHN MARSHALL;
18  MARTIN VEAL; GUILLERMINA
    HALL; ROBERT AYERS; SCOTT M.
19  KERNAN; THOMAS L. CAREY;
    DERRAL ADAMS; GEORGE
20  GIURBINO; J. SALAZAR;
    MADELENE A. MUNTZ; A. K.
21  SCRIBNER; ANTHONY KANE;
    STEVE MOORE; MATTHEW
22  KRAMER; T. FELKER; DERRICK
    OLLISON; ROSANNE CAMPBELL;
23  LEA ANN CHRONES; RICHARD
    KIRKLAND; JAMES A. YATES;
24  ROBERT J. HERNANDEZ; MIKE
    EVANS; STEVEN ORONSKI;
25  GLORIA HENRY; P. L. VASQUEZ;
    WILLIAM ELKINS; MAELEY TOM;
26  ANNE SHEEHAN; SEAN HARRIGAN;
    FLOYD SHIMOMURA; RON
27  ALVARADO; RODERICK Q.
    HICKMAN; JEANNE S. WOODFORD;
28  RONALD BARNES; BARRY SMITH;

MERRIE KOSHELL; ARNOLD
ORTEGA; AL BONILLA; SABRINA
JOHNSON; OCTAVIO PERAZA;
JORGE SARELI; TIP KENDAL; ITO
NEINHUIS; K.J. WILLIAMS;
CHAPLAIN STEWART; CHAPLAIN
RICHIE; CHAPLAIN VALENZUELA;
and ARNOLD SCHWARZENEGGER

**Defendants.**

This complaint is filed by Patrick McCollum and by Ian Shayne Duncan, Josef Michael Jensen, Kenneth E. Capogreco, Donnie Dacus, Scott Forrest Collins, Kevin Coy Iloff, David Spooner and Gregory L. Mourland (collectively "Plaintiffs"). Plaintiffs all adhere to the Wiccan/Pagan faiths.[1] Plaintiffs Duncan, Jensen, Capogreco, Dacus, Collins, Iloff, Spooner and Mourland (collectively the "Wiccan/Pagan Inmates"), state claims on their own behalf and on behalf of the class alleged herein. Plaintiffs complain as follows:

## PRELIMINARY STATEMENT

1.    This action arises from the violation of plaintiffs' civil rights under the United States and California Constitutions, and under federal and state law. This action is brought by Patrick McCollum, a state-approved volunteer Wiccan/Pagan California correctional institution chaplain, and by Wiccan/Pagan inmates in the custody of the California Department of Corrections and Rehabilitation ("CDCR") on behalf of a class of all prison inmates who have practiced or have desired to practice Wiccan/Pagan faiths in the CDCR since 1998. Plaintiffs

---

[1]  The term "Wiccan/Pagan" as used in this complaint means faith groups consisting of Wiccans, Goddess worshippers, Neo-Pagans, Pagans, Norse Pagans (and any other ethnic designation), Earth Religionists, Old Religionists, Druids, Shamans, Asatrus, and those practicing in the Faery, Celtic, Khemetic, Gardnerian, Church of All Worlds, Reclaiming, Dianic, Alexandrian, Iseum of Isis, Reconstructionist, Odinist or Yoruban Traditions, and other similar nature-based faiths. Plaintiff McCollum is informed and believes that CDCR personnel and others use the term "Wiccan" to refer to several of such faiths, including without limitation the Khemetic, Santerian, Asatru and Odinist traditions, as well as Wicca as evidenced by the fact that Plaintiff McCollum was originally designated as the CDCR "Wiccan Chaplain" to serve inmates in several of these traditions and has provided chaplaincy services for inmates from such traditions. Plaintiff is informed and believes that, in other contexts, the term "Pagan" is used to designate the above-listed faiths generally.

1  seek relief from ongoing religious discrimination and denial of constitutionally protected religious

2  rights and freedoms.

3       2.     This action also arises under Title VII and other federal and state laws because

4  defendants have engaged in employment discrimination against Plaintiff McCollum.

5       3.     Defendants have created and carried out a denominational hiring system for prison

6  chaplains that on its face, and as applied, discriminates and classifies job applicants and positions

7  on the basis of religion.  That is, there are civil service classifications by religious denomination

8  for "Protestant Chaplain," "Catholic Chaplain," "Jewish Chaplain," "Muslim Chaplain," and

9  "Native American Spiritual Leader" (the "Five State-Sanctioned Faiths").  The state has no other

10  chaplain positions.  Chaplains who practice Wiccan/Pagan religions, or any other non-sanctioned

11  religion (for example, Hindu, Buddhist, or Mormon) are *automatically disqualified* from

12  obtaining any position as a state chaplain, regardless of the individual's skill as a spiritual advisor

13  or training as an interfaith religious leader.

14       4.     Upon information and belief, defendants selected and have continued to endorse

15  the Five State-Sanctioned Faiths for which they would hire chaplains based on the content of the

16  faiths and not based on objective criteria that are uniformly applied to all faiths in administering

17  the chaplaincy program.  For example, upon information and belief, the religions for which

18  chaplains are hired are not a function of inmate populations because there are more Wiccan/Pagan

19  inmates than Jewish inmates.

20       5.     By adopting and carrying out a state hiring system that favors the Five State-

21  Sanctioned Faiths, and elevates them, on a subjective basis, over others, defendants violate the

22  constitutional prohibitions against government establishment of religion.  The Five State-

23  Sanctioned Faiths are provided with paid chaplain positions, with the benefits and privileges that

24  status provides; other faiths are provided only with volunteer chaplain opportunities or none at all,

25  based on criteria that are not objective and content-neutral.  In effect there is a two-tier system:

26  the privileged Five State-Sanctioned Faiths on the one hand and all other faiths on the other,

27  without any objective, non-content-based basis for making the distinction.  This chaplain civil

28

1  service classification system sponsoring only five faiths and the policies and practices it generates

2  throughout the CDCR is referenced herein as the "Five State-Sanctioned Faiths Policy."

3        6.      The two-tier system inherent in the Five State-Sanctioned Faiths Policy denies

4  Wiccan/Pagan clergy equal protection under the law.  State-employed chaplains are provided

5  benefits and privileges no volunteer chaplain could ever obtain.  Wiccan/Pagan clergy, who are

6  only permitted by defendants to serve as volunteers, if at all, are denied funding for religious

7  needs and are denied the greater access to inmates granted to Five State-Sanctioned Faiths clergy,

8  with no objective justification related to, for example, inmate population religious preferences or

9  the security needs of the prisons.  In addition, because they are volunteers, Wiccan/Pagan clergy

10  lack the same benefits and protections that state employees have against harassment and

11  discrimination in the workplace.

12        7.      The two-tier system inherent in the Five State-Sanctioned Faiths Policy creates a

13  lack of resources and denial of access, which denies Wiccan/Pagan inmates the ability to

14  participate in essential religious ceremonies and perform religious rites mandated by their faith.

15  Chaplains of the Five State-Sanctioned Faiths who are hired are often hostile to Wiccan/Pagan

16  religions, yet are called on to oversee Wiccan/Pagan religious life because of the absence of

17  Wiccan/Pagan chaplains.  In many cases, the Five State-Sanctioned Faiths Chaplains discriminate

18  against the Wiccan/Pagans when forced into such roles and prioritize the needs of the adherents

19  of their own faiths above the needs of the Wiccan/Pagans.  Upon information and belief,

20  defendants know that this occurs and take no adequate steps to correct such behavior and fail to

21  screen potential hires for such biases.  The overall policy of defendants results in a substantial

22  burden on Wiccan/Pagan inmates' free exercise of religion.  In addition, the Five State-

23  Sanctioned Faiths Policy creates a culture of discrimination against Wiccan/Pagan inmates, who

24  are deprived of the benefits and protections enjoyed by inmates practicing state-sponsored

25  religions.

26        8.      Plaintiffs seek a declaration that the chaplain civil service classification system

27  sponsoring only the Five State-Sanctioned Faiths, without objective criteria for selection of the

28  religions that are entitled to paid chaplains, is unconstitutional.  Plaintiffs seek injunctive relief to

1    require defendants to abolish the current chaplain civil service classifications and conform

2    chaplain hiring policies and inmate religious accommodation policies to policies based on

3    objective criteria that include, at least in part, inmate population religious preferences and

4    willingness and ability of chaplains to serve in a religiously pluralistic environment, as well as

5    objectively fair allocation of resources.  Plaintiffs seek injunctive relief to prohibit defendants

6    from adopting policies and customs that disparately treat minority religions based on non-

7    objective criteria.  The injunctive relief sought requires defendants to accommodate minority

8    religion inmates' religious exercise in a manner that does not result in imposing a substantial

9    burden on their religious exercise, unless it is in furtherance of a compelling governmental

10   interest and unless defendants use the least restrictive means of furthering that compelling

11   governmental interest.  Any such restrictions should be no more restrictive than those applied to

12   inmates practicing more common religions.   Plaintiff McCollum seeks recovery in the forms

13   enumerated in the prayer for relief for discrimination in employment and for the other violations

14   referenced herein.

15                                   **JURISDICTION AND VENUE**

16        9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 28

17   U.S.C. § 1343, Section 706(f) of Title VII of the Civil Rights Act, and 42 U.S.C. §§ 2000bb-1(c),

18   2000cc-2(a) and directly under the United States and California Constitutions.  The Court has

19   jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

20   Injunctive relief is authorized under Fed. R. Civ. P. 65.  The Court has supplemental jurisdiction

21   over the state law claims pursuant to 28 U.S.C. § 1367.  Plaintiffs bring this action pursuant to 42

22   U.S.C. § 1983, 42 U.S.C. §§ 2000cc *et. seq.* (RLUIPA), and Title VII of the Civil Rights Act, and

23   claims all available attorneys' fees and other remedies available under these laws.

24        10.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that the unlawful

25   policies, practices, actions and omissions alleged herein were and are committed by agents and

26   employees of the State of California in this district and throughout the state.

27

28

**INTRADISTRICT ASSIGNMENT**

11.     This action is properly filed in the San Francisco Division of the United States District Court for the Northern District of California pursuant to Civil Local Rules 3-2(c) and (e) because a substantial part of the events giving rise to the claims set forth in this Complaint occurred in Marin County, which is part of the San Francisco Division.

**PARTIES**

**Plaintiffs**

12.     Plaintiff Patrick M. McCollum is a resident of California and has been ordained as Wiccan clergy since 1972, as Wiccan/Pagan clergy since 1987, and as an Odinist clergy.  Plaintiff McCollum is a member of the American Correctional Association, the American Correctional Chaplains' Association, and the Association of Chaplains in California State Service.  He has served as a national Wiccan/Pagan religious advisor for the Federal Bureau of Prisons in Washington, D.C. and has advised staff at the Pentagon on religious accommodation issues. Plaintiff McCollum also has served as the Wiccan/Pagan religious advisor for fourteen (14) state correctional systems, including the state of California.  Since 2004, he has served as the national liaison between the American Academy of Religion ("AAR") and correctional authorities in the United States.  In that capacity, he has coordinated annual meetings in conjunction with the AAR's annual meetings, during which AAR scholars and the heads of the religious programs from various states and the federal correctional system, as well as others such as the President of the American Correctional Chaplains Association, confer about religious accommodation issues, among other things.  In conjunction with those meetings, Plaintiff McCollum has coordinated the development of what is now being called the National Correctional Chaplaincy Directors' Association, for which he is serves as Program Chair.  Plaintiff McCollum has facilitated in-service training for correctional staff regarding Wiccan/Pagans at various correctional institutions in California and Colorado.  Plaintiff McCollum is knowledgeable in many Wiccan/Pagan traditions and is recognized as a leader in the Wiccan/Pagan Community.  As such, Plaintiff McCollum is sought out to advise institutions on Wiccan/Pagan practices and accommodation of these practices in correctional settings.  Plaintiff McCollum has lectured at a number of colleges

1  and universities and has served for over thirty years within various intrafaith and interfaith

2  organizations, and has served as an expert witness on religious issues involving Wiccan/Pagans.

3  Plaintiff McCollum currently serves as a faculty member of Cherry Hill Seminary, a Wiccan

4  seminary whose central office is in Vermont, and is the Director of the Cherry Hill Seminary

5  Chaplaincy Program.  He is also the National Coordinator for the Lady Liberty League Prison

6  Ministry Program (formerly the Lady Liberty League Prison Issues Task Force) of Circle

7  Sanctuary, Madison, Wisconsin, and he has been teaching annual seminars on prison chaplaincy

8  at the Pagan Leadership Institute in Ohio since 2000.  Plaintiff McCollum has been serving as a

9  volunteer Wiccan chaplain for the California Department of Corrections since at least 1997.

10  Plaintiff McCollum is disqualified from applying to any paid chaplain position in the California

11  Department of Corrections and Rehabilitation solely because his religion is not one of the Five

12  State-Sanctioned Faiths.

13        13.    Plaintiff Ian Shayne Duncan is a prisoner currently incarcerated in California State

14  Prison-Sacramento, located in Represa, California.  Mr. Duncan has been a practicing member of

15  the Wiccan/Pagan faith for nearly 20 years.  His beliefs are sincerely held.  Mr. Duncan has been

16  incarcerated in five (5) or more state prisons in California, including but not limited to, California

17  State Prison-Sacramento, North Kern State Prison, California Correctional Institute at Tehachapi,

18  High Desert State Prison, and California State Prison - Los Angeles County.

19        14.    Plaintiff Josef Michael Jensen is a prisoner currently incarcerated in California

20  State Prison-Sacramento, located in Represa, California.  Mr. Jensen is a practicing member of

21  the Wiccan/Pagan faith.  His beliefs are sincerely held.  Mr. Jensen has been incarcerated in three

22  (3) or more state prisons in California, including but not limited to, California State Prison-

23  Sacramento, North Kern State Prison, and Salinas Valley State Prison.

24        15.    Plaintiff Kenneth E. Capogreco is a prisoner currently incarcerated in California

25  State Prison-Sacramento, located in Represa, California.  Mr. Capogreco has been a practicing

26  member of the Wiccan/Pagan faith for several years.  His beliefs are sincerely held.  Mr.

27  Capogreco has been incarcerated at seven (7) or more state prisons in California, including but

28  not limited to, California State Prison-Sacramento, Folsom State Prison, Mule Creek State Prison,

North Kern State Prison, Pelican Bay State Prison, California Correctional Institute at Tehachapi, and High Desert State Prison.

16.     Plaintiff Donnie Dacus is a prisoner currently incarcerated at Avenal State Prison. Mr. Dacus has been a practicing member of the Wiccan/Pagan faith and has done so most of his life. His beliefs are sincerely held. Mr. Dacus has been incarcerated at two (2) or more state prisons in California, including but not limited to, Avenal State Prison and Folsom State Prison.

17.     Plaintiff Scott Forrest Collins is a prisoner currently incarcerated at San Quentin State Prison. Mr. Collins has been a practicing member of the Wiccan/Pagan faith for several years. His beliefs are sincerely held. Mr. Collins has been incarcerated at four (4) or more state prisons in California, including but not limited to, San Quentin State Prison, California Correctional Institute at Tehachapi, Chuckawalla Valley State Prison, and California Correctional Center.

18.     Plaintiff Kevin Coy Iloff is a prisoner currently incarcerated in Pleasant Valley State Prison, located in Coalinga, California. Mr. Iloff has been a practicing member of the Wiccan/Pagan faith for several years. His beliefs are sincerely held. Mr. Iloff has been incarcerated five (5) or more state prisons in California, including but not limited to, California State Prison-Sacramento, Folsom State Prison, Pelican Bay State Prison, Deuel Vocational Institute, and Pleasant Valley State Prison.

19.     Plaintiff David Spooner is a prisoner currently incarcerated at Salinas Valley State Prison. Mr. Spooner has been a practicing member of the Wiccan/Pagan faith for several years. His beliefs are sincerely held. Mr. Spooner has been incarcerated at two (2) or more state prisons in California, including but not limited to, California State Prison-Sacramento and Salinas Valley State Prison.

20.     Plaintiff Gregory L. Mourland is a prisoner currently incarcerated at High Desert State Prison. Mr. Mourland has been a practicing member of the Wiccan/Pagan faith for several years. His beliefs are sincerely held. Mr. Mourland has been incarcerated at one (1) or more state prisons in California, including, but not limited to High Desert State Prison.

21.     The class that the Wiccan/Pagan Inmate Plaintiffs represent are all Wiccan/Pagans who, are, or will be incarcerated at each of the Institutional Defendants, as that term is defined in Paragraph 109.

**<u>Defendants</u>**

22.     The CDCR is the successor-in-interest to the Youth and Adult Correctional Agency ("YACA") and the departments and boards within the agency, including the Department of Corrections ("CDC"), which were reorganized into the CDCR on July 1, 2005.  Reference to the CDCR in this complaint is intended to include predecessors to the CDCR.  The CDCR is the parent agency of the Institutional Defendants and is responsible for managing the state's adult prison and parole systems.  Upon information and belief the CDCR is the employer of all chaplains serving in the correctional system.

23.     The Office of Community Resources ("OCR"), or its successor within the CDCR, administers, interprets, and formulates religious policy and procedures; acts as liaison between the CDCR and major national, state, and local religious organizations; reviews chaplain selections prior to appointment; and advises on the conduct of religious programs and in-service training for chaplains.  The OCR also formulates and administers policies and procedures for volunteer activity by the community and staff and is responsible for collecting data for statistical reports and dissemination.  Reference to the OCR in this complaint is intended to include its predecessors and successors.  The OCR oversees each prison's Community Resource Manager ("CRM") or Associate Warden of Operations ("AWO"), who are charged with overseeing religious programming in the prisons.  References to the CRM and AWO in this complaint are intended to reference individuals with such job responsibilities, regardless of whether they were technically known by another title at some point in time.

24.     The California State Personnel Board ("SPB") administers the civil service classification system for the state.  Reference to the SPB is intended to include its predecessors and successors.  The SPB creates and adjusts classes of positions and establishes minimum qualifications for determining the fitness and qualifications of employees for each class of position.  The SPB created the civil service classifications for prison chaplains.

1      25.    Avenal State Prison ("Avenal") is, and at all times relevant to this lawsuit was, a

2    correctional facility that operates under the CDCR, duly organized and existing under the laws of

3    the State of California.

4      26.    California Correctional Center ("CCC") is, and at all times relevant to this lawsuit

5    was, a correctional facility that operates under the CDCR, duly organized and existing under the

6    laws of the State of California.

7      27.    California Correctional Institution ("Tehachapi") is, and at all times relevant to

8    this lawsuit was, a correctional facility that operates under the CDCR, duly organized and

9    existing under the laws of the State of California.

10      28.    California Institution for Men ("Chino") is, and at all times relevant to this lawsuit

11    was, a correctional facility that operates under the CDCR, duly organized and existing under the

12    laws of the State of California.

13      29.    California Institution for Women ("Corona") is, and at all times relevant to this

14    lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing

15    under the laws of the State of California.

16      30.    California Men's Colony ("San Luis Obispo") is, and at all times relevant to this

17    lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing

18    under the laws of the State of California.

19      31.    California Medical Facility ("Vacaville") is, and at all times relevant to this

20    lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing

21    under the laws of the State of California.

22      32.    California Rehabilitation Center ("Norco") is, and at all times relevant to this

23    lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing

24    under the laws of the State of California.

25      33.    California State Prison, Los Angeles County, in Lancaster, California

26    ("Lancaster") is, and at all times relevant to this lawsuit was, a correctional facility that operates

27    under the CDCR, duly organized and existing under the laws of the State of California.

28      34.    California State Prison, Sacramento ("Sacramento") is, and at all times relevant to

1    this lawsuit was, a correctional facility that operates under the CDCR, duly organized and

2    existing under the laws of the State of California.

3         35.    California State Prison, Solano ("Solano") is, and at all times relevant to this

4    lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing

5    under the laws of the State of California.

6         36.    California Substance Abuse Treatment Facility at Corcoran ("SATF") is, and at all

7    times relevant to this lawsuit was, a correctional facility that operates under the CDCR, duly

8    organized and existing under the laws of the State of California.

9         37.    Calipatria State Prison ("Calipatria") is, and at all times relevant to this lawsuit

10   was, a correctional facility that operates under the CDCR, duly organized and existing under the

11   laws of the State of California.

12        38.    California State Prison, Centinela ("Centinela") is, and at all times relevant to this

13   lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing

14   under the laws of the State of California.

15        39.    Chuckawalla Valley State Prison ("Chuckawalla") is, and at all times relevant to

16   this lawsuit was, a correctional facility that operates under the CDCR, duly organized and

17   existing under the laws of the State of California.

18        40.    Corcoran State Prison ("Corcoran") is, and at all times relevant to this lawsuit was,

19   a correctional facility that operates under the CDCR, duly organized and existing under the laws

20   of the State of California.

21        41.    Correctional Training Facility ("Soledad") is, and at all times relevant to this

22   lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing

23   under the laws of the State of California.

24        42.    Deuel Vocational Institution ("Tracy") is, and at all times relevant to this lawsuit

25   was, a correctional facility that operates under the CDCR, duly organized and existing under the

26   laws of the State of California.

27        43.    Folsom State Prison ("Folsom") is, and at all times relevant to this lawsuit was, a

28   correctional facility that operates under the CDCR, duly organized and existing under the laws of

1    the State of California.

2        44.    High Desert State Prison ("High Desert") is, and at all times relevant to this

3    lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing

4    under the laws of the State of California.

5        45.    Ironwood State Prison ("Ironwood") is, and at all times relevant to this lawsuit

6    was, a correctional facility that operates under the CDCR, duly organized and existing under the

7    laws of the State of California.

8        46.    Mule Creek State Prison ("Mule Creek") is, and at all times relevant to this lawsuit

9    was, a correctional facility that operates under the CDCR, duly organized and existing under the

10   laws of the State of California.

11       47.    North Kern State Prison ("North Kern") is, and at all times relevant to this lawsuit

12   was, a correctional facility that operates under the CDCR, duly organized and existing under the

13   laws of the State of California.

14       48.    Pelican Bay State Prison ("Pelican Bay") is, and at all times relevant to this lawsuit

15   was, a correctional facility that operates under the CDCR, duly organized and existing under the

16   laws of the State of California.

17       49.    Pleasant Valley State Prison ("Pleasant Valley") is, and at all times relevant to this

18   lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing

19   under the laws of the State of California.

20       50.    R. J. Donovan Correctional Facility at Rock Mountain ("Rock Mountain") is, and

21   at all times relevant to this lawsuit was, a correctional facility that operates under the CDCR, duly

22   organized and existing under the laws of the State of California.

23       51.    Salinas Valley State Prison ("Salinas Valley") is, and at all times relevant to this

24   lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing

25   under the laws of the State of California.

26       52.    San Quentin State Prison ("San Quentin") is, and at all times relevant to this

27   lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing

28   under the laws of the State of California.

53.    Valley State Prison For Women ("Chowchilla") is, and at all times relevant to this lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing under the laws of the State of California.

54.    Wasco State Prison ("Wasco") is, and at all times relevant to this lawsuit was, a correctional facility that operates under the CDCR, duly organized and existing under the laws of the State of California.

55.    Plaintiffs are informed and believe that Kathy Mendoza-Powers ("Mendoza-Powers") is or was at some time relevant to this complaint the Warden of Avenal State Prison. Accordingly, plaintiffs sue Mendoza-Powers in her official capacity.

56.    Plaintiffs are informed and believe that Kathleen Prosper ("Prosper") is or was at some time relevant to this complaint the Warden of California Correctional Center in Susanville, California.  Accordingly, plaintiffs sue Prosper in her official capacity.

57.    Plaintiffs are informed and believe that William Sullivan ("Sullivan") is or was at some time relevant to this complaint the Warden of California Correctional Institution at Tehachapi.  Accordingly, plaintiffs sue Sullivan in his official capacity.

58.    Plaintiffs are informed and believe that M.E. Poulos ("Poulos") is or was at some time relevant to this complaint the Warden of California Institution for Men.  Accordingly, Accordingly, plaintiffs sue Poulos in his official capacity.

59.    Plaintiffs are informed and believe that Dawn Davison ("Davison") is an individual acting in her official capacity and at some of the times mentioned herein was employed by the CDCR as the Warden of California Institution for Women.  Accordingly, plaintiffs sue Davison in her official capacity.

60.    Plaintiffs are informed and believe that John Marshall ("Marshall") is or was at some time relevant to this complaint the Warden of California Men's Colony.  Accordingly, plaintiffs sue Marshall in his official capacity.

61.    Plaintiffs are informed and believe that Martin Veal ("Veal") is or was at some time relevant to this complaint the Warden of California Medical Facility.  Accordingly, plaintiffs sue Veal in his official capacity.

62.     Plaintiffs are informed and believe that Guillermina Hall ("Hall") is an individual acting in her official capacity and at some of the times mentioned herein was employed by the CDCR as the Warden of California Rehabilitation Center.  Accordingly, plaintiffs sue Hall in her official capacity.

63.     Plaintiffs are informed and believe that Robert Ayers ("Ayers") is or was at some time relevant to this complaint the Warden of California State Prison in Los Angeles County. Accordingly, plaintiffs sue Ayers in his official capacity.

64.     Plaintiffs are informed and believe that Scott M. Kernan ("Kernan") is or was at some time relevant to this complaint the Warden of California State Prison at Sacramento. Accordingly, plaintiffs sue Kernan in his official capacity.

65.     Plaintiffs are informed and believe that Thomas L. Carey ("Carey") is or was at some time relevant to this complaint the Warden of California State Prison at Solano. Accordingly, plaintiffs sue Carey in his official capacity.

66.     Plaintiffs are informed and believe that Derral Adams ("Adams") is or was at some time relevant to this complaint the Warden of Substance Abuse Treatement Facility and State Prison.  Accordingly, plaintiffs sue Adams in his official capacity.

67.     Plaintiffs are informed and believe that George Giurbino ("Giurbino") is or was at some time relevant to this complaint the Warden of Calipatria.  Accordingly, plaintiffs sue Giurbino in his official capacity.

68.     Plaintiffs are informed and believe that J. Salazar ("Salazar") is or was at some time relevant to this complaint the Warden of Centinela.  Accordingly, plaintiffs sue Salazar in his official capacity.

69.     Plaintiffs are informed and believe that Madelene A. Muntz ("Muntz") is an individual acting in her official capacity and at some of the times mentioned herein was employed by the CDCR as the Warden of Chuckawalla Valley State Prison.  Accordingly, plaintiffs sue Muntz in her official capacity.

70.     Plaintiffs are informed and believe that A. K. Scribner  ("Scribner") is or was at some time relevant to this complaint the Warden of Corcoran.  Accordingly, plaintiffs sue

1   Scribner in his official capacity.

2          71.     Plaintiffs are informed and believe that Anthony Kane ("Kane") is or was at some

3   time relevant to this complaint the Warden of Correctional Training Facility.  Accordingly,

4   plaintiffs sue Kane in his official capacity.

5          72.     Plaintiffs are informed and believe that Steve Moore ("Moore") is or was at some

6   time relevant to this complaint the Warden of Deuel Vocational Institution.  Accordingly,

7   plaintiffs sue Moore in his official capacity.

8          73.     Plaintiffs are informed and believe that Matthew Kramer ("Kramer") is or was at

9   some time relevant to this complaint the Warden of Folsom.  Accordingly, plaintiffs sue Kramer

10  in his official capacity.

11         74.     Plaintiffs are informed and believe that T. Felker ("Felker") is or was at some time

12  relevant to this complaint the Warden of High Desert State Prison.  Accordingly, plaintiffs sue

13  Felker in his official capacity.

14         75.     Plaintiffs are informed and believe that Derrick Ollison ("Ollison") is or was at

15  some time relevant to this complaint the Warden of Ironwood State Prison.  Accordingly,

16  plaintiffs sue Ollison in his official capacity.

17         76.     Plaintiffs are informed and believe that Rosanne Campbell ("Campbell") is or was

18  at some time relevant to this complaint the Warden of Mule Creek.  Upon information and belief,

19  Campbell, while Warden at Mule Creek, directed Mule Creek staff to refuse Plaintiff McCollum

20  access to Wiccan/Pagan inmates and refused Wiccan/Pagan inmates access to Plaintiff McCollum

21  or other Wiccan/Pagan clergy.  Campbell denied Wiccan/Pagan inmates religious

22  accommodation, religious artifacts, and religious services, obstructed inmates' access to clergy

23  without legitimate or compelling reason, and forced inmates to file grievances to obtain rights to

24  which they were entitled.  Plaintiff McCollum has never been able to access Mule Creek inmates.

25  Accordingly, plaintiffs sue Campbell in her individual and official capacity.

26         77.     Plaintiffs are informed and believe that Lea Ann Chrones ("Chrones") is or was at

27  some time relevant to this complaint the Warden of North Kern.  Accordingly, plaintiffs sue

28  Chrones in his official capacity.

78.    Plaintiffs are informed and believe that Richard Kirkland ("Kirkland") is or was at some time relevant to this complaint the Warden of Pelican Bay State Prison.  Accordingly, plaintiffs sue Kirkland in his official capacity.

79.    Plaintiffs are informed and believe that James A. Yates ("Yates") is or was at some time relevant to this complaint the Warden of Pleasant Valley.  Accordingly, plaintiffs sue Yates in his official capacity.

80.    Plaintiffs are informed and believe that Robert J. Hernandez ("Hernandez") is or was at some time relevant to this complaint the Warden of Richard J. Donovan Correctional Facility.  Accordingly, plaintiffs sue Hernandez in his official capacity.

81.    Plaintiffs are informed and believe that Mike Evans ("Evans") is or was at some time relevant to this complaint the Warden of Salinas Valley.  Accordingly, plaintiffs sue Evans in his official capacity.

82.    Plaintiffs are informed and believe that Steven Oronski ("Oronski") is or was at some time relevant to this complaint the Warden of San Quentin State Prison.  Accordingly, plaintiffs sue Oronski in his official capacity.

83.    Plaintiffs are informed and believe that Gloria Henry ("Henry") is or was at some time relevant to this complaint the Warden of Valley State Prison for Women.  Accordingly, plaintiffs sue Henry in her official capacity.

84.    Plaintiffs are informed and believe that P.L. Vasquez ("Vasquez") is or was at some time relevant to this complaint the Warden of Wasco State Prison.  Accordingly, plaintiffs sue Vasquez in her official capacity.

85.    Plaintiffs are informed and believe that William Elkins ("Elkins") is or was at some time relevant to this complaint a member of the State Personnel Board at some of the times mentioned herein and currently serves as the Personnel Board's President.  Upon information and belief, Elkins failed to review and revise civil service classifications to conform them to existing antidiscrimination laws.  Accordingly, plaintiffs sue Elkins in his individual and official capacity.

86.    Plaintiffs are informed and believe that Maeley Tom ("Tom") is or was at some time relevant to this complaint a member of the State Personnel Board and currently serves as the

1    Personnel Board's Vice President.  Accordingly, plaintiffs sue Tom in his official capacity.

2        87.    Plaintiffs are informed and believe that Anne Sheehan ("Sheehan") is or was at

3    some time relevant to this complaint a member of the State Personnel Board Board.  Accordingly,

4    plaintiffs sue Sheehan in his official capacity.

5        88.    Plaintiffs are informed and believe that Sean Harrigan ("Harrigan") is or was at

6    some time relevant to this complaint a member of the State Personnel Board.  Accordingly,

7    plaintiffs sue Harrigan in his official capacity.

8        89.    Plaintiffs are informed and believe that Floyd Shimomura ("Shimomura") is or

9    was at some time relevant to this complaint the Executive Officer of the State Personnel Board.

10   Accordingly, plaintiffs sue Shimomura in his official capacity.

11       90.    Plaintiffs are informed and believe that Ron Alvarado ("Alvarado") is or was at

12   some time relevant to this complaint a member of the State Personnel Board.  Accordingly,

13   plaintiffs sue Alvarado in his official capacity.

14       91.    Plaintiffs are informed and believe that Roderick Q. Hickman ("Hickman") is or

15   was at some time relevant to this complaint the Secretary of the CDCR.  Upon information and

16   belief, Hickman formerly served as Secretary of the Youth and Adult Correctional Agency, which

17   oversaw the former California Department of Corrections, and which has been reorganized into

18   the CDCR.  Upon information and belief, Hickman was informed in times relevant to claims

19   alleged herein that the CDCR hiring policy for correctional chaplains was unconstitutional

20   because it discriminated against Wiccan/Pagans, and informed Hickman that there were ongoing

21   other policies, practices, actions, and omissions that discriminated against Plaintiff McCollum

22   and the Wiccan/Pagan inmates.  Upon information and belief, Hickman allowed the

23   discrimination to continue.  Accordingly, plaintiffs sue Hickman in his individual and official

24   capacity.

25       92.    Plaintiffs are informed and believe that Jeanne S. Woodford ("Woodford") is or

26   was at some time relevant to this complaint the Director of CDCR, and prior to that was the

27   Warden at San Quentin.  Upon information and belief, Woodford was informed at times relevant

28   to claims alleged herein that the CDCR hiring policy for correctional chaplains was

1  unconstitutional because it discriminated against Wiccan/Pagans, and was informed that there

2  were ongoing other policies, practices, actions, and omissions that discriminated against Plaintiff

3  McCollum and the Wiccan/Pagan inmates.  Plaintiff McCollum is informed and believes that

4  since that time to at least the filing of this action in both her capacity as warden at defendant San

5  Quentin and her more recent capacity as Director of CDCR, Woodford took no action to

6  investigate Plaintiff's claims or to remedy the discrimination.  Accordingly, plaintiffs sue

7  Woodford in her individual and offical capacity.

8      93.    Plaintiffs are informed and believe that Ronald Barnes ("Barnes") is or was at

9  some time relevant to this complaint the Special Assistant to the Undersecretary of the CDCR.

10  Plaintiff McCollum informed Barnes at times relevant to claims alleged herein that the CDCR

11  hiring policy for correctional chaplains was unconstitutional because it discriminated against

12  Wiccan/Pagans, and informed Barnes that there were ongoing other policies, practices, actions,

13  and omissions that discriminated against Plaintiff McCollum and the Wiccan/Pagan inmates.

14  Upon information and belief, Barnes allowed the discrimination to continue.  Accordingly,

15  plaintiffs sue Barnes in his individual and official capacity.

16      94.    Plaintiffs are informed and believe that Barry Smith ("Smith") is or was at some

17  time relevant to this complaint the manager of the OCR or its successor.  Plaintiff McCollum

18  informed Smith at times relevant to claims alleged herein that the CDCR hiring policy for

19  correctional chaplains was unconstitutional because it discriminated against Wiccan/Pagans, and

20  informed Smith that there were ongoing other policies, practices, actions, and omissions that

21  discriminated against Plaintiff McCollum and the Wiccan/Pagan inmates.  Upon information and

22  belief, Smith has taken affirmative actions to disrupt Plaintiff McCollum's chaplaincy work in

23  California correctional institutions and made false and derogatory statements about Plaintiff

24  McCollum.  Upon information and belief, Smith allowed the discrimination and obstruction to

25  continue.  Accordingly, plaintiffs sue Smith in his individual and official capacity.

26      95.    Plaintiffs are informed and believe that Merrie Koshell ("Koshell") is or was at

27  some time relevant to this complaint the Assistant Director of the OCR or its successor.

28  Accordingly, plaintiffs sue Koshell in her official capacity.

96.    Plaintiffs are informed and believe that Arnold Ortega ("Ortega") is or was at some time relevant to this complaint the Community Resource Manager responsible for overseeing religious programs at Salinas Valley.  When Ortega was the Community Resource Manager at Salinas Valley, Ortega denied Plaintiff McCollum access to inmates and denied inmates access to Plaintiff McCollum.  Upon information and belief, Ortega denied Wiccan/Pagan inmates religious accommodation, religious artifacts, and religious services, and obstructed inmates' access to clergy.  Accordingly, plaintiffs sue Ortega in his individual and official capacity.

97.    Plaintiffs are informed and believe that Al Bonilla ("Bonilla") is or was at some time relevant to this complaint the Community Resource Manager of Pleasant Valley.  Bonilla denied Plaintiff McCollum access to inmates and denied inmates access to Plaintiff McCollum.  Upon information and belief, Bonilla denied Wiccan/Pagan inmates religious accommodation, religious artifacts, and religious services, and obstructed inmates' access to clergy.  Accordingly, plaintiffs sue Bonilla in his individual and official capacity.

98.    Plaintiffs are informed and believe that Sabrina Johnson ("Johnson") is or was at some time relevant to this complaint the Community Resource Manager at Corcoran.  When Johnson was the Community Resource Manager at Corcoran, she denied Plaintiff McCollum access to inmates and denied inmates access to Plaintiff McCollum.  Upon information and belief, Johnson denied Wiccan/Pagan inmates religious accommodation, religious artifacts, and religious services, and obstructed inmates' access to clergy.  Upon information and belief, Johnson intentionally delayed and failed to complete security clearances for Plaintiff McCollum to deny him access to inmates.  Accordingly, plaintiffs sue Johnson in her individual and official capacity.

99.    Plaintiffs are informed and believe that Octavio Peraza ("Peraza") is or was at some time relevant to this complaint Community Resource Manager at Calipatria.  When Peraza was the Community Resource Manager at Calipatria, he denied Plaintiff McCollum access to inmates and denied inmates access to Plaintiff McCollum.  Upon information and belief, Peraza denied Wiccan/Pagan inmates religious accommodation, religious artifacts, and religious services, and obstructed inmates' access to clergy.  Accordingly, plaintiffs sue Peraza in his

1  individual and official capacity.

2      100.    Plaintiffs are informed and believe that Jorge Sareli ("Sareli") is or was at some

3  time relevant to this complaint the Community Resource Manager at Salinas Valley.  When Sareli

4  was the Community Resource Manager at Salinas Valley, he denied Plaintiff McCollum access to

5  inmates and denied inmates access to Plaintiff McCollum.  Sareli continued to deny Plaintiff

6  McCollum access after being provided documentation that Wiccan/Pagan faiths were recognized

7  by the CDCR and after being provided documentation that Plaintiff McCollum was authorized to

8  serve as state-wide Wiccan Chaplain.  Upon information and belief, Sareli denied Wiccan/Pagan

9  inmates religious accommodation, religious artifacts, and religious services, and obstructed

10  inmates' access to clergy.  Accordingly, plaintiffs sue Sareli in his individual and official

11  capacity.

12      101.    Plaintiffs are informed and believe that Tip Kendal ("Kendal") is or was at some

13  time relevant to this complaint Community Resource Manager at Folsom Prison.  When Kendal

14  was the Community Resource Manager at Folsom Prison, he denied Plaintiff McCollum access to

15  inmates and denied inmates access to Plaintiff McCollum.  Kendal continued to deny Plaintiff

16  McCollum access after being provided documentation that Wiccan/Pagan faiths were recognized

17  by the CDCR and after being provided documentation that Plaintiff McCollum was authorized to

18  serve as state-wide Wiccan Chaplain.  Upon information and belief, Kendal denied Wiccan/Pagan

19  inmates religious accommodation, religious artifacts, and religious services, and obstructed

20  inmates' access to clergy.  Accordingly, plaintiffs sue Kendal in his individual and official

21  capacity.

22      102.    Plaintiffs are informed and believe that Ito Neinhuis ("Neinhuis") is or was at

23  some time relevant to this complaint the Community Resource Manager at San Quentin.  When

24  Neinhuis was the Community Resource Manager at San Quentin, he denied Plaintiff McCollum

25  access to inmates and denied inmates access to Plaintiff McCollum.  Neinhuis continued to deny

26  Plaintiff McCollum access after being provided documentation that Wiccan/Pagan faiths were

27  recognized by the CDCR and after being provided documentation that Plaintiff McCollum was

28  authorized to serve as state-wide Wiccan Chaplain.  Upon information and belief, Nienhuis

1   denied Wiccan/Pagan inmates religious accommodation, religious artifacts, and religious

2   services, and obstructed inmates' access to clergy.  Accordingly, plaintiffs sue Neinhuis in his

3   individual and official capacity.

4          103.    Plaintiffs are informed and believe that K.J. Williams ("Williams") is or was at

5   some time relevant to this complaint in charge of Religion Programs at San Quentin. When

6   Williams oversaw religion programs at Folsom Prison, he denied Plaintiff McCollum access to

7   inmates and denied inmates access to Plaintiff McCollum.  Williams continued to deny Plaintiff

8   McCollum access after being provided documentation that Wiccan/Pagan faiths were recognized

9   by the CDCR and after being provided documentation that Plaintiff McCollum was authorized to

10  serve as state-wide Wiccan Chaplain.  Upon information and belief, Williams denied

11  Wiccan/Pagan inmates religious accommodation, religious artifacts, and religious services, and

12  obstructed inmates' access to clergy.  Accordingly, plaintiffs sue Williams in his individual and

13  official capacity.

14         104.    Plaintiffs are informed and believe that Chaplain Stewart ("Stewart") is or was at

15  some time relevant to this complaint the Protestant Chaplain at Sacramento.  While at

16  Sacramento, Stewart was the Protestant Chaplain in charge of Wiccan inmate religious

17  accommodation.  Upon information and belief, when serving as Protestant Chaplain, Stewart

18  obstructed Wiccan/Pagan inmates' access to religious services, denied their access to the chapel,

19  instructed chapel clerks to falsify ducat lists for Wiccan/Pagan inmates so that Wiccan/Pagan

20  inmates could not attend religious services, and refused to process Wiccan/Pagan inmates' orders

21  for religious artifacts when ordered from approved vendors.  Accordingly, plaintiffs sue Stewart

22  in his individual and official capacity.

23         105.    Plaintiffs are informed and believe that Chaplain Richie ("Richie") is or was at

24  some time relevant to this complaint the Protestant Chaplain at Calipatria.  While at Calipatria,

25  Richie denied Plaintiff McCollum access to inmates.  Richie continued to deny Plaintiff

26  McCollum access after being provided documentation that Wiccan/Pagan faiths were recognized

27  by the CDCR and after being provided documentation that Plaintiff McCollum was authorized to

28  serve as state-wide Wiccan Chaplain.  Upon information and belief, Richie denied Wiccan/Pagan

inmates religious accommodation, religious artifacts, and religious services, and obstructed inmates' access to clergy. Accordingly, plaintiffs sue Richie in his individual and official capacity.

106. Plaintiffs are informed and believe that Chaplain Valenzuela ("Valenzuela") is or was at some time relevant to this complaint the Protestant Chaplain at California Correctional Institution at Tehachapi. While at Tehachapi, Valenzuela was the Protestant Chaplain in charge of Wiccan inmate religious accommodation. Upon information and belief, Valenzuela obstructed Wiccan/Pagan inmates' access to religious services, denied their access to the chapel, removed approved Wiccan/Pagan literature, instructed chapel clerks to falsify ducat lists for Wiccan/Pagan inmates so that Wiccan/Pagan inmates could not attend religious services, refused to process Wiccan/Pagan inmates' orders for religious artifacts when ordered from approved vendors and incited staff and inmates to take actions to interfere with any religious accommodation provided to the Wiccan/Pagan inmates. Accordingly, plaintiffs sue Valenzuela in his individual and official capacity.

107. Plaintiffs are informed and believe that Governor Arnold Schwarzenegger ("Schwarzenegger") is or was at some time relevant to this complaint the governor of the State of California. Accordingly, plaintiffs sue Schwarzenegger in his official capacity.

108. As set forth above, defendants Campbell, Elkins, Hickman, Woodford, Barnes, Smith, Ortega, Bonilla, Johnson, Peraza, Sareli, Kendal, Neinhuis, Williams, Stewart, Richie, and Valenzuela are being sued in their individual and official capacities. Unless otherwise noted, they are referred to herein collectively as "Individual Capacity Defendants." All other individuals named in this Complaint are being sued in their official capacities. Unless otherwise noted, they are referred to herein collectively as "Official Capacity Defendants." Pursuant to Federal Rule of Civil Procedure 25(d) the naming of the officials in their official capacity is intended to and does reach the conduct of all predecessors and successors to their positions during the relevant time period.

109. All defendants are referred to herein collectively as "Defendants." The defendant California correctional institutions are referred to herein collectively as "Institutional

1    Defendants."

2    110.    Upon information and belief, the Wiccan/Pagan Inmate Class were, or will be, in

3    the custody of the Institutional Defendants during the times relevant to this lawsuit.  Defendants

4    have engaged in the practices complained of in this complaint during the relevant time period.

5    **CLASS ACTION ALLEGATIONS**

6    111.    The Wiccan/Pagan Inmate Plaintiffs seek to maintain this action on behalf of

7    themselves and all others similarly situated pursuant to Rules 23(a) and 23(b) of the Federal Rules

8    of Civil Procedure.  They seek to represent a class of all Wiccan/Pagan inmates, including but not

9    limited to Wiccans, Goddess worshippers, Neo-Pagans, Pagans, Norse Pagans (and any other

10   ethnic designation), Earth Religionist, Old Religionist, Druids, Shamans, Asatrurs, and those

11   practicing in the Faery, Celtic, Khemetic, Gardnerian, Church of All Worlds, Reclaiming, Dianic,

12   Alexandrian, Iseum of Isis, Reconstructionist, Odinists or Yoruban Traditions and other similar

13   nature-based faiths who have been confined in the California Department of Corrections at any

14   time from 1998 to present (the "Wiccan/Pagan Inmate Class") and who will be so confined in the

15   future.  As a result of their confinement, members of the class including the Wiccan/Pagan Inmate

16   Plaintiffs are or will be subjected to violations of the rights to free exercise of religion, freedom

17   from state establishment of religion, freedom from discriminatory treatment on the basis of

18   religion, and the guarantees of equal protection under the law.  The Wiccan/Pagan Inmate

19   Plaintiffs represent a class of persons seeking declaratory and injunctive relief to eliminate

20   defendants' actions, omissions, policies, and practices that deprive them of those rights.

21   112.    Upon information and belief, it is estimated that a substantial number of

22   (significantly more than 100) persons incarcerated in the California prison system practice

23   Wiccan/Pagan religions.  As such, the proposed class is so numerous that joinder of all members

24   is impracticable.

25   113.    Whether defendants have violated the Wiccan/Pagan Inmate Class' rights to free

26   exercise of religion, equal protection under the law, freedom from state establishment of religion,

27   and freedom from religious discrimination are questions common to the claims of the entire class.

28   Defendants' policies and practices with regard to their prison chaplain hiring policy and the

1    actions, omissions, policies and practices with regard to religious accommodation, as set forth

2    herein, also present questions of fact common to the class as a whole.

3            114.    The claims of the Wiccan/Pagan Inmate Plaintiffs are typical of the claims of the

4    class.  The Wiccan/Pagan Inmate Plaintiffs include inmates who have practiced or seek to

5    practice their Wiccan/Pagan religion.  The Wiccan/Pagan Inmate Plaintiffs have been directly

6    injured by defendants' actions, omissions, policies and practices.

7            115.    The Wiccan/Pagan Inmate Plaintiffs will fairly and adequately represent the

8    interests of the class.  The Wiccan/Pagan Inmate Plaintiffs have no interests separate from those

9    of the class, and seek no relief other than the relief sought on behalf of the class.  The

10   Wiccan/Pagan Inmate Plaintiffs' counsel are experienced in protection and enforcement of

11   statutory and constitutional rights, privileges and immunities.

12           116.    Defendants have acted and refused to act on grounds generally applicable to the

13   class, therefore final injunctive relief with respect to the class as a whole is warranted.

14                           **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

15           117.    Plaintiff McCollum satisfied all conditions precedent to jurisdiction pursuant to

16   Title VII of the Civil Rights Act of 1964 ("Title VII").  Plaintiff McCollum timely filed charges

17   of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 21,

18   2003, based on a series of related acts against Plaintiff McCollum involving Plaintiff McCollum's

19   ineligibility for a chaplain position.  The EEOC terminated this investigation and Plaintiff

20   McCollum received his "Notice of Right to Sue" letter from the EEOC on July 7, 2004.  This suit

21   was timely filed within 90 days of receiving said letter.

22           118.    Plaintiff McCollum satisfied all conditions precedent to jurisdiction pursuant to the

23   California Fair Employment and Housing Act ("FEHA").  Plaintiff McCollum filed a complaint

24   with the EEOC on July 21, 2003.  The EEOC referred the complaint to the Department of Fair

25   Employment and Housing ("DFEH").  On July 22, 2003, Plaintiff McCollum received a Right-to-

26   Sue notice from the DFEH.  The DFEH waived processing of Plaintiff McCollum's complaint to

27   the EEOC.  The EEOC completed its investigation and Plaintiff McCollum received the above-

28   referenced right-to-sue notice on July 7, 2004.

119.    The Wiccan/Pagan Inmate Plaintiffs have exhausted their administrative remedies to the extent those remedies are not futile or abusive, and, upon information and believe, allege that additional grievances would be futile because they would be decided under the same policies and by the same people.  Further, the Wiccan/Pagan Inmate Plaintiffs' attempts to file additional grievances have been frustrated by defendants who refused to process and/or lost timely filed 602 complaints as part of an effort to frustrate the ability of Wiccan/Pagan inmates to raise claims with the Court.  Upon information and belief, when defendants do not lose or entirely ignore 602s relating to the matters set forth in this complaint, there is unreasonable delay in responding and an indefinite time period for administrative action or when relief is allegedly granted the relief granted is often not implemented.  Further, absent a change in the Five State-Sanctioned Faiths policy, the persons responsible for processing the 602s lack the ability to address fully the deprivation of the substantial constitutional rights at issue.

## STATEMENT OF FACTS

**The Chaplaincy Program**

120.    Section 5009 of the California Penal Code provides that all state prison inmates shall be afforded reasonable opportunities to exercise religious freedom.  Prison wardens are obligated under the California Administrative Code to make "every reasonable effort to provide for the religious and spiritual welfare of all interested individuals and groups of inmates."

121.    The CDCR has hired chaplains since 1931 to accommodate the religious freedoms of prisoners.  The position of chaplain is a civil service classification created by the SPB.  There are, and for all times relevant to this lawsuit, have been five chaplain civil service classifications: "Catholic Chaplain," "Protestant Chaplain," "Jewish Chaplain," "Muslim Chaplain," and "Native American Spiritual Advisor."   Applicants for these positions are segregated by faith and minimum qualifications for these positions limit applicants by faith.  The system has no mechanism to hire clergy of any other religious denomination.

122.     The CDCR chaplaincy program does not reflect the religious preferences of the inmate population.  The CDCR decided in 1957 to limit chaplain positions to Catholic, Protestant, and Jewish.  The decision to add the classification of Muslim chaplain in 1981 was made by

1    stipulated judgment in a lawsuit involving the provision of Muslim faith services.  The decision to

2    add the classification of Native American Spiritual Advisor in 1989 was made by stipulated

3    judgment after Native American inmates sued to obtain funding for Native American religious

4    programming in parity with other recognized religions.  When last surveyed, in 2002, Wiccan

5    inmates alone, excluding any other Wiccan/Pagan inmates, numbered in the hundreds and

6    outnumbered Jewish inmates by two to one.  The CDCR does not sponsor a single state

7    Wiccan/Pagan chaplain, but sponsors at least three Jewish chaplains.  There are no objective

8    criteria that are applied, without regard to the content of a religion, to determine which religions

9    will have chaplains or what other types of accommodations should be provided to Wiccan/Pagan

10   inmates.  Instead, there is pervasive discrimination in favor of particular faiths with no objective

11   justification for the manner and means by which clergy of particular faiths and the extent and

12   manner of other religious accommodations are selected and no ongoing review and adjustment of

13   the policy to address changing demographics and other factors in the CDCR.

14   **<u>Wiccan/Pagans Are Treated Unequally</u>**

15   123.    The Five State-Sanctioned Faiths Policy creates a two-tier system of sponsored

16   religions and unsponsored religions.  State chaplain positions are limited to Five State-Sanctioned

17   Faiths clergy; Wiccan/Pagan clergy and clergy of all other faiths may only become volunteers and

18   then only if approved by the relevant institution, which approval is often denied without cause.

19   State chaplains have state funding for religious services and artifacts, regular access to inmates,

20   and intangible benefits associated with their official status.  Volunteer chaplains and the inmates

21   they serve do not have access to any of these benefits and privileges.  These differences are the

22   product of discrimination, not based on objective, content-neutral criteria.

23   124.    Five State-Sanctioned Faiths inmates receive greater levels of religious

24   accommodation than do Wiccan/Pagan inmates as a result of state sponsorship of Five State-

25   Sanctioned Faiths chaplains.  Chaplains of the Five State-Sanctioned Faiths who are hired are

26   often hostile to Wiccan/Pagan religions, yet are called on to oversee Wiccan/Pagan religious life

27   because of the absence of Wiccan/Pagan chaplains.  The Five State-Sanctioned Faiths chaplains

28   discriminate against the Wiccan/Pagans when forced into such roles and prioritize the needs of

1  the adherents of their own faiths above the needs of the Wiccan/Pagans.  Inmates are served by

2  volunteer chaplains or not served by any chaplains at all, including the Wiccan/Pagan Inmate

3  Class.  Wiccan/Pagan class members are denied the benefits and privileges of state sponsorship,

4  with no objective, justification such as custody or security for such denials.  Wiccan/Pagan

5  inmates have restricted access to the chapel or other space for conducting services, to clergy, to

6  funds for religious activities and religious objects, to time off work for religious holidays and

7  services, and to religious counseling that is disproportionate to that of other inmates.  This

8  discrimination is pervasive and the limitations it imposes on the Wiccan/Pagan Inmates is the

9  product of unlawful discrimination against them, not the product of a content-neutral compelling

10  governmental interest.

11  **Religious Program Policies**

12      125.    On information and belief, Plaintiffs allege that the CDCR Department Operations

13  Manual ("DOM") regulates religious programs.  Among other regulations, the DOM approves

14  kosher diets and Christian religious artifacts, and regulates the provision and use of sweat lodges.

15  The DOM does not address religious services, religious artifacts, or religious texts for

16  Wiccan/Pagan faiths.

17      126.    On information and belief, Plaintiffs allege that each prison warden has authority

18  to enact a regulatory supplement to the DOM, which restricts or expands the religious

19  programming sections set out in the DOM.  These regulatory supplements are also enacted as

20  Operational Procedures.  These supplemental religious programming regulations are drafted

21  and/or enforced in a manner so as to exclude Wiccan/Pagan religious artifacts, omit vendors who

22  supply Wiccan/Pagan religious artifacts, limit Wiccan/Pagan services, and deny Wiccan/Pagan

23  inmates religious accommodation, and restrict free exercise of religious rights.  Such policies are

24  tolerated by the CDCR.

25  **Wiccan/Pagan Chaplain**

26      127.    In 1997, as part of a settlement agreement with a Wiccan inmate, the California

27  Attorney General's office contacted Plaintiff McCollum and requested that he provide Wiccan

28  services to inmates at California Correctional Institution at Tehachapi.

**Religious Discrimination in Employment**

128.    During the relevant time period and within the applicable statutes of limitations, Plaintiff McCollum, an ordained religious leader and qualified spiritual advisor, sought state employment as a chaplain.  On at least eight occasions, including within the two-year time period preceeding the filing of this Complaint, Plaintiff McCollum has been denied the opportunity to apply for a CDCR chaplain position because defendants will not hire Wiccan/Pagans for chaplain positions.  The CDCR will continue to deny him an opportunity to apply or be hired for an open chaplain position so long as the Five State-Sanctioned Faiths Policy remains in effect.

129.    Despite Plaintiff McCollum's qualifications to perform the job duties of a chaplain, defendant CDCR continued to seek other applicants for each open chaplain positions sought by Plaintiff McCollum.

130.    On or about July 21, 2003, Plaintiff McCollum filed an employment discrimination claim with the Equal Employment Opportunity Commission against the CDCR to protest defendants' disparate treatment of non-Five State-Sanctioned Faiths religions in employment.

131.    The Five State-Sanctioned Faiths Policy, by which defendants sponsor chaplain positions for only the Five State-Sanctioned Faiths, and in which only clergy ordained in one of those Five State-Sanctioned Faiths may apply for a state chaplain position, is still in force today.

**Religious Discrimination, Retaliation and Burdens on Free Exercise of Religion**

132.    Plaintiff McCollum has experienced discriminatory and unequal treatment by defendants, including without limitation:

(a)    false and derogatory remarks regarding Plaintiff McCollum's religion, character, congregation, clergy colleagues and deity;

(b)    false accusations of misconduct by Plaintiff McCollum and other volunteer Wiccan/Pagan clergy whom Plaintiff McCollum has brought to CDCR institutions;

(c)    threats of violence;

(d)    differential, disrespectful, and disdainful treatment of Plaintiff McCollum and the religious items he has brought to CDCR institutions;

(e)    inciting Protestant inmates to take action against Plaintiff McCollum and Plaintiff McCollum's congregation;

(f)    slander; and

(g)    being denied access to CDCR institutions to serve inmates.

133.    Plaintiff McCollum informed defendants on several occasions that he experienced and continues to experience derogatory treatment.  Defendants failed to take prompt action to halt the discriminatory and abusive behavior.

134.    Plaintiff McCollum also complained to defendants, who were his supervisors, about the discriminatory treatment experienced by the Wiccan/Pagan inmates.  On more than one occasion, Plaintiff McCollum informed defendants that their actions were in violation of law. After Plaintiff McCollum spoke out about the discrimination toward him and the Wiccan/Pagan inmates, defendants retaliated against him for his speech, including, without limitation on many occasions refusing to respond to his phone calls to schedule services and refusal to approve security clearances.  When these actions occurred, they prevented Plaintiff McCollum from being able to serve as a volunteer Wiccan Chaplain to many in his inmate congregation, i.e. the Wiccan/Pagan Inmate Class.

135.    Wiccan/Pagan Inmate Class members experienced discriminatory and unequal treatment as a result of defendants' conduct, including without limitation:

(a)    denial of access to clergy, religious services, religious rites and religious literature;

(b)    confiscation and/or destruction of religious artifacts;

(c)    denial of adequate and reasonable access to funds for religious activities;

(d)    denial of adequate and reasonable access to time off work for religious holidays and services;

(e)    denial of access to religious counseling in times of personal crisis, such as a death in the family;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        (f)       subjection to ridicule by staff, humiliation and derogatory treatment, including false and derogatory statements regarding class members' religion, character, and deity;

        (g)       unequal treatment and retaliation in the administrative "602" grievance process;

        (h)       ordering more severe punishment than others receive for substantially similar infractions;

        (i)       altering documents to change a Wiccan/Pagan Inmate's religious preference, when such a change is not requested by the inmate;

        (j)       threats of violence based on religious preference; and

        (k)       differential, disrespectful and disdainful treatment of Wiccan/Pagan inmates and their religious items.

      136.   Wiccan/Pagan Inmate Class Representatives have grieved without success issues to institutional defendants including but not limited to:

        (a)       deprivation of correspondence and various literature of a religious nature;

        (b)       deprivation of attendance at Wiccan/Pagan religious services;

        (c)       unreasonable delay in providing approved religious accoutrements, literature and spiritual artifacts;

        (d)       denial of appropriate worship on Wiccan/Pagan holidays or significant dates in the Wiccan/Pagan faith;

        (e)       deprivation of religious services administered and celebrated by a Wiccan/Pagan minister or chaplain;

        (f)       denial of access to religious accoutrements, such as herbs, oils, plants and stones or other significant spiritual necklaces, marbles or other items; and

        (g)       confiscation and destruction of religious accoutrements and spiritual artifacts;

        (h)       discrimination based on religious beliefs;

        (i)       deprivation of the right to practice Wiccan/Pagan religious services; and

1          (j)      retaliation based on the exercise of religious beliefs.

2                  **DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS**

3          137.    An actual and substantial controversy exists between Plaintiff McCollum and the

4    Wiccan/Pagan Inmate Class, on the one hand, and defendants, on the other hand, as to their

5    respective legal rights and duties.  Plaintiff McCollum and the Wiccan/Pagan Inmate Class

6    contend that defendants' denominational minimum qualifications for chaplain positions is illegal.

7    Plaintiff McCollum and the Wiccan/Pagan Inmate Class allege that, on information and belief,

8    defendants contend the restriction is valid.  Plaintiff McCollum and the Wiccan/Pagan Inmate

9    Class also contend that the selection of only five faiths for state chaplain civil service

10   classifications, without the application of objective criteria and periodic review of which religions

11   fit within those criteria, and the attendant benefits and privileges the state bestows on the Five

12   State-Sanctioned Faiths, is an illegal establishment of religion.  Plaintiff McCollum and the

13   Wiccan/Pagan Inmate Class allege that, on information and belief, defendants contend the "Five

14   State-Sanctioned Faiths Policy" is valid.  Plaintiffs have no plain, speedy or adequate remedy at

15   law.  A declaration that the policies, practices, actions, and omissions such as are alleged herein

16   are unconstitutional and contrary to law is appropriate.

17         138.    If not enjoined by the Court, defendants will continue to restrict Plaintiff

18   McCollum and the Wiccan/Pagan Inmate Class's ability to exercise their religion by denying

19   Plaintiff McCollum employment and full access to his congregation and by denying the

20   Wiccan/Pagan Inmate Class access to clergy, religious services, and religious artifacts.  This

21   restriction will impose irreparable injury on Plaintiff McCollum and the Wiccan/Pagan Inmate

22   Class.

23         139.    If not enjoined by the Court, defendants will continue to treat Plaintiff McCollum

24   and the Wiccan/Pagan Inmate Class disparately and deny them equal protection under the law.

25   This treatment will impose irreparable injury on Plaintiff McCollum and the Wiccan/Pagan

26   Inmate Class.   Plaintiff McCollum and the Wiccan/Pagan Inmate Class have no plain, speedy or

27   adequate remedy at law.

28

SFI-535364v3

SECOND AMENDED COMPLAINT
Case No. C-04-3339 CRB

140.    Injunctive relief including, but not limited to, an order enjoining defendants' future policies, practices, actions, and omissions such as are alleged herein, and requiring the reformation of the defendants' policies, practices, actions, and omissions so as to eliminate their discriminatory effect, are therefore appropriate and necessary to avoid irreparable harm to Plaintiffs and to effectuate the purposes of the United States and California Constitutions, RLUIPA, Title VII, FEHA and the other statutes and laws referenced herein as the subject of Plaintiff McCollum and the Wiccan/Pagan Inmate Class' claims for relief.

## CLAIMS FOR RELIEF

**FIRST CLAIM:  TITLE VII OF THE 1964 CIVIL RIGHTS ACT VIOLATION (42 U.S.C. §§2000e *et seq.*)**

**(Plaintiff McCollum Against Defendants CDCR, SPB, OCR and the Institutional Defendants)**

141.    Plaintiff McCollum refers to and incorporates herein by reference the allegations contained in Paragraphs 1 through 140 as if fully set forth in this claim for relief.

142.    Defendants are employers subject to Title VII.

143.    The Five State-Sanctioned Faiths Policy in itself and as applied, and the other policies and the practices, actions, and omissions alleged herein, constitute unlawful discrimination in employment on the basis of religion in violation of Title VII.

144.    Defendants have limited, segregated and/or classified Plaintiff McCollum and all non-Five State-Sanctioned Faiths applicants in a way that deprives Plaintiff McCollum and non-Five State-Sanctioned Faiths applicants of employment opportunities or otherwise adversely affects the opportunities or status of the individual because of their religion.  Defendants channel individuals who do not belong to the Five State-Sanctioned Faiths into volunteer opportunities instead of civil service positions or deny them any chaplaincy work altogether.  Job postings for the Five State-Sanctioned Faiths chaplain positions, which are limited by religious faith, contain terms or phrases that would deter non-Five State-Sanctioned Faiths persons from applying.  There are no legitimate, objective or content-neutral criteria applied to determine which Faiths the

1   defendants will recognize.  Defendants' actions directed to the Wiccan/Pagan Inmate Class are

2   not the least restrictive means of furthering a compelling governmental interest.

3          145.    The intentional limiting, segregating and /or classifying of job positions was the

4   determinative factor in Plaintiff McCollum's disqualification from employment as a chaplain.

5          146.    As a direct and proximate cause of the above-named Defendants' policies,

6   practices, actions, and omissions alleged in this complaint, Plaintiff McCollum has suffered and,

7   on information and belief, will continue to suffer special damages including, but not limited to,

8   lost wages and benefits, lost future earnings, according to proof.

9          147.    The above-named defendants undertook the policies, practices, actions, and

10  omissions alleged in this complaint intentionally and with willful disregard for the rights of

11  Plaintiff McCollum.

12         148.    Injunctive relief is warranted by the allegations set forth throughout this complaint

13  and as specifically alleged above in Paragraphs 137 through 140.

14  **SECOND CLAIM:  FOURTEENTH AMENDMENT: EQUAL PROTECTION CLAUSE**

15  **(Plaintiff McCollum and the Wiccan/Pagan Inmate Class Against All Official Capacity**
    **Defendants and All Individual Defendants)**
16

17         149.    Plaintiff McCollum and the Wiccan/Pagan Inmate Class refer to and incorporate

18  herein by reference the allegations contained in Paragraphs 1 through 148 as if fully set forth in

19  this claim for relief.

20         150.    The actions against defendants complained of herein are brought pursuant to 42

21  U.S.C. § 1983 because defendants' conduct constitutes a violation of the Equal Protection Clause

22  of the Fourteenth Amendment to the U.S. Constitution.  Defendants' policies, practices, acts and

23  omissions deprive Plaintiff McCollum and the Wiccan/Pagan Inmate Class, either directly or

24  indirectly, of equal access to privileges and benefits granted as a matter of course to Five State-

25  Sanctioned Faiths practitioners, without any objective, content neutral justification for such

26  discrimination and without establishing that the actions of defendants were further penological

27  goal.

28

1    151.   The above-named defendants undertook the policies, practices, actions, and

2  omissions alleged in this complaint intentionally and with willful disregard for the rights of

3  Plaintiff McCollum.

4    152.   In violating Plaintiff McCollum's and the Wiccan/Pagan Inmate Class' rights

5  under the Fourteenth Amendment to the United States Constitution, Defendants directly and

6  proximately caused Plaintiff McCollum and the Wiccan/Pagan Inmate Class to suffer emotional

7  distress, humiliation and dignitary harms, among other injuries.

8    153.   Injunctive relief is warranted by the allegations set forth throughout this complaint

9  and as specifically alleged above in Paragraphs 137 through 140.

10  **THIRD CLAIM:  FIRST AND FOURTEENTH AMENDMENTS: FREE EXERCISE OF**
    **RELIGION**

11
    **(The Wiccan/Pagan Inmate Class Against All Official Capacity Defendants and All**
12  **Individual Defendants)**

13    154.   The Wiccan/Pagan Inmate Class refers to and incorporates herein by reference the

14  allegations contained in Paragraphs 1 through 153 as if fully set forth in this claim for relief.

15    155.   The First Amendment to the United States Constitution, as incorporated though the

16  Fourteenth Amendment, prohibits defendants from enacting regulations and policies that result in

17  "establishment of religion, or [that] prohibit[] the free exercise thereof."

18    156.   The actions against defendants complained of herein are brought pursuant to 42

19  U.S.C. § 1983 because defendants' conduct constitutes a violation of the Free Exercise Clause of

20  the First Amendment to the U.S. Constitution.  Defendants' policies, practices, acts and omissions

21  substantially burden the ability of the Wiccan/Pagan Inmate Class to practice their religion and

22  prevent them from engaging in religious ceremonies and conduct that form the core practices of

23  the religion.  Defendants have no legitimate or compelling reason for placing a substantial burden

24  on the Wiccan/Pagan Inmate Class' ability to practice their religion.

25    157.   That a substantial burden on inmates' free exercise of religion violates the First

26  Amendment was clearly established law of which a reasonable person in defendants' position

27  would have known.

28

1    158.    In violating the Wiccan/Pagan Inmate Class' rights under the First Amendment to

2    the United States Constitution, defendants directly and proximately caused the Wiccan/Pagan

3    Inmate Class to suffer and continue to suffer emotional distress, humiliation and dignitary harms,

4    among other injuries.

5    159.    The above-named defendants undertook the policies, practices, actions, and

6    omissions alleged in this complaint intentionally and with willful disregard for the rights of the

7    Wiccan/Pagan Inmate Class.

8    160.    Injunctive relief is warranted by the allegations set forth throughout this complaint

9    and as specifically alleged above in Paragraphs 137 through 140.

10   **FOURTH CLAIM:  FIRST AND FOURTEENTH AMENDMENTS: ESTABLISHMENT
     CLAUSE (SECTION 1983)**

11

12   **(Plaintiff McCollum and the Wiccan/Pagan Inmate Class Against All Official Capacity
     Defendants and All Individual Defendants)**

13   161.    Plaintiff McCollum and the Wiccan/Pagan Inmate Class refer to and incorporate

14   herein by reference the allegations contained in Paragraphs 1 through 160 as if fully set forth in

15   this claim for relief.

16   162.    The actions against Plaintiffs complained of herein are brought pursuant to 42

17   U.S.C. § 1983 because defendants' conduct constitutes a violation of the Establishment Clause of

18   the First Amendment to the U.S. Constitution, as incorporated though the Fourteenth

19   Amendment.  Defendants' policies, practices, acts and omissions in sponsoring chaplains only

20   from the Five State-Sanctioned Faiths religions, without any objective, content neutral

21   justification for such discrimination, endorsed and established those religions.

22   163.    The above-named defendants undertook the policies, practices, actions, and

23   omissions alleged in this complaint intentionally and with willful disregard for the rights of

24   Plaintiff McCollum and the Wiccan/Pagan Inmate Class.

25   164.    In violating Plaintiff McCollum's and the Wiccan/Pagan Inmates Class' rights

26   under the First Amendment to the United States Constitution, defendants directly and proximately

27   caused Plaintiff McCollum and the Wiccan/Pagan Inmate Class to suffer and to continue to suffer

28   emotional distress, humiliation and dignitary harms, among other injuries.

165.    Injunctive relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraphs 137 through 140.

**FIFTH CLAIM:FIRST AND FOURTEENTH AMENDMENTS FREE SPEECH RIGHTS VIOLATION (SECTION 1983)**

**(Plaintiff McCollum Against All Individual Defendants)**

166.    Plaintiff McCollum refers to and incorporates herein by reference the allegations contained in Paragraphs 1 through 165 as if fully set forth in this claim for relief.

167.    The actions of defendants complained of herein are brought pursuant to 42 U.S.C. § 1983 and constitute a violation of the First Amendment to the U.S. Constitution, as incorporated though the Fourteenth Amendment.  Defendants' policies, practices, acts and omissions in retaliation against Plaintiff McCollum's constitutionally protected expression violated Plaintiff McCollum's right to free speech.

168.    Defendants had authority over Plaintiff McCollum's access to prisons and inmates and his service as a volunteer.

169.    Defendants retaliated against Plaintiff McCollum for speaking out on matters of public concern, specifically by complaining against the unlawful and discriminatory practices inherent in the chaplaincy program, intentional discriminatory acts by state employees, and the failure to reasonably accommodate the religious practices of Wiccan/Pagan inmates.

170.    Defendants' retaliation is manifested by their obstruction of Plaintiff McCollum's access to prisons and inmates and the denial of Plaintiff McCollum's opportunity to serve as a volunteer for the government, which opportunity is governmental benefit or privilege, the deprivation of which can trigger First Amendment scrutiny.

171.    Defendants committed additional retaliatory acts against Plaintiff that violate Plaintiffs' First Amendment Free Speech rights, including ostracism, silent treatment, selective enforcement of the rules, poor reviews, defamatory statements to the media, intimidation, and harassment.

172.    It was clearly established at all times relevant in the complaint that the opportunity to volunteer in prisons is a valuable government benefit.  A reasonable person in defendants'

1    position should have known that obstructing Plaintiff McCollum's access to prisons and inmates

2    by delaying security clearances or refusing to schedule services deprived Plaintiff McCollum of

3    the opportunity to volunteer.

4         173.    It was clearly established at all relevant times that individuals, including those who

5    are not technically employees, suffer retaliation when they are deprived a valuable government

6    benefit because of their speech on a matter of public concern.

7         174.    The above-named defendants undertook the policies, practices, actions, and

8    omissions alleged in this complaint intentionally and with willful disregard for the rights of

9    Plaintiff McCollum.

10        175.    As a direct and proximate cause of the above-named Defendants' policies,

11   practices, actions, and omissions alleged in this complaint, Plaintiff McCollum has suffered and,

12   on information and belief, will continue to suffer special damages including, according to proof.

13        176.    Injunctive relief is warranted by the allegations set forth throughout this complaint

14   and as specifically alleged above in Paragraphs 137 through 140.

15   **SIXTH CLAIM:  RELIGIOUS LAND USE AND INSTITUTIONAL PERSONS**
     **VIOLATION (U.S.C. §§ 2000cc, *et seq.*)(RLUIPA)**
16
     **(Plaintiff McCollum and the Wiccan/Pagan Inmate Class Against the CDCR, the OCR, the**
17   **Institutional Defendants, the All Official Capacity Defendants and the All Individual**
     **Capacity Defendants)**
18

19        177.    Plaintiff McCollum and the Wiccan/Pagan Inmate Class refer to and incorporate

20   herein by reference the allegations contained in Paragraphs 1 through 176 as if fully set forth in

21   this claim for relief.

22        178.    The Religious Land Use and Institutionalized Persons Act prohibits any substantial

23   burden on free exercise of religion unless it (1) furthers a compelling government interest, and (2)

24   is the least restrictive means of furthering that compelling interest.  Restrictions that merely

25   further a legitimate penological interest are invalidated by RLUIPA.

26        179.    Upon information and belief, the CDCR receives financial assistance from the

27   United States Government.

28

SFI-535364v3

SECOND AMENDED COMPLAINT
Case No. C-04-3339 CRB

180.    The policies, practices, actions, and omissions alleged in this complaint substantially burden the Wiccan/Pagan Inmates Class' exercise of religion in violation of U.S.C. §§ 2000cc, *et seq*. and threaten to continue burdening the Wiccan/Pagan Inmates' religious practice.

181.    The burdens on the Wiccan/Pagan Inmates Class' religious practice are not the least restrictive means of furthering any compelling government interest.

182.    The above-named defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiff McCollum and the Wiccan/Pagan Inmate Class.

183.    As a direct and proximate cause of the policies, practices, actions, and omissions of the defendants alleged in this complaint, Plaintiff McCollum and the Wiccan/Pagan Inmate Class have suffered and continue to suffer emotional distress, humiliation and dignitary harms, among other injuries.

184.    Injunctive relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraphs 137 through 140.

**SEVENTH CLAIM:  ARTICLE 1, § 4 OF THE CONSTITUTION OF THE STATE OF CALIFORNIA VIOLATION**

**(Plaintiff McCollum and the Wiccan/Pagan Inmate Class Against the All Official Capacity Defendants and the All Individual Defendants)**

185.    Plaintiffs refer to and incorporate herein by reference the allegations contained in Paragraphs 1 through 184 as if fully set forth in this claim for relief.

186.    Article I (Declaration of Rights), § 4 of the Constitution of the State of California provides, in pertinent part:  "Free exercise and enjoyment of religion without discrimination or preference are guaranteed . . . .  The Legislature shall make no law respecting an establishment of religion."

187.    The Five State-Sanctioned Faiths Policy in itself and as applied and the other policies and the practices, actions, and omissions of the defendants alleged in this complaint violate the proscriptions of Article I, § 4 of the Constitution of the State of California.

188.    The Five State-Sanctioned Faiths Policy in itself and as applied and the other policies and the practices, actions, and omissions of the defendants alleged in this complaint have prevented Plaintiff McCollum from applying for a position as a chaplain in any CDCR institution, being hired for a position as a chaplain in any CDCR institution, and from being paid per diem and for expenses incurred as a volunteer chaplain in any CDCR institution.

189.    The Five State-Sanctioned Faiths Policy in itself and as applied and the other policies and the practices, actions, and omissions of the defendants alleged in this complaint have resulted in religious discrimination against Plaintiff McCollum and the Wiccan/Pagan Inmate Class and preferences being granted to inmates and clergy of the Five State-Sanctioned Faiths sponsored by defendants.

190.    The above-named defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiff McCollum and the Wiccan/Pagan Inmate Class.

191.    As a direct and proximate cause of the policies, practices, actions, and omissions of the Defendants alleged in this complaint, Plaintiff McCollum and the Wiccan/Pagan Inmate Class have suffered and continue to suffer emotional distress, humiliation and dignitary harms, among other injuries, and Plaintiff McCollum has suffered and, on information and belief, will continue to suffer special damages including, but not limited to, lost wages and benefits, lost future earnings, according to proof.

192.    Defendants undertook the policies, practices, actions, and omissions alleged in this complaint willfully and with disregard for the rights of Plaintiff McCollum and the Wiccan/Pagan Inmate Class.

193.    Injunctive relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraphs 137 through 140.

**EIGHTH CLAIM:  FAIR EMPLOYMENT AND HOUSING ACT (FEHA) VIOLATION: DISCRIMINATION**

**(Plaintiff McCollum Against Defendants CDCR, SPB, OCR, and the Institutional Defendants)**

194.    Plaintiff McCollum refers to and incorporates herein by reference the allegations contained in Paragraphs 1 through 193 as if fully set forth in this claim for relief.

195.    Under FEHA, it is "an unlawful employment practice for an employer to . . . discriminate against a person in  . . . employment."

196.    Defendants are employers within the meaning of Cal. Gov. Code § 12926(d).

197.    Plaintiff McCollum sought employment with defendants as a salaried chaplain.

198.    Plaintiff McCollum practices a bona fide religious belief.  Defendants knew of Plaintiff McCollum's religious belief.  Plaintiff McCollum's religious belief conflicted with Defendants' sponsorship of only Five State-Sanctioned Faiths for paid chaplain positions because it made him ineligible to apply for an open salaried chaplain position.

199.    The Five State-Sanctioned Faiths Policy in itself and as applied and the other policies and the practices, actions, and omissions of the Defendants alleged in this complaint have resulted in discrimination to Plaintiff McCollum.

200.    As a direct and proximate cause of the policies, practices, actions, and omissions of the defendants alleged in this complaint, Plaintiff McCollum suffered and continues to suffer emotional distress, humiliation and dignitary harms, among other injuries, and Plaintiff McCollum has suffered and, on information and belief, will continue to suffer special damages including, but not limited to, lost wages and benefits, lost future earnings, according to proof.

201.    Defendants undertook the policies, practices, actions, and omissions alleged in this complaint intentionally and with willful disregard for the rights of Plaintiff McCollum.

202.    Injunctive relief is warranted by the allegations set forth throughout this complaint and as specifically alleged above in Paragraphs 137 through 140.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff McCollum and the Wiccan/Pagan Inmate Class, individually and on behalf of all others similarly situated, request that this Court do the following:

      (a)     Assume jurisdiction over this action;

      (b)     Issue an order certifying this action to proceed as a class pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure;

      (c)     Issue a judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure declaring that the Five State-Sanctioned Faiths hiring policy is unconstitutional on its face and that the policies, practices, acts and omissions complained of herein violate Plaintiff McCollum and the Wiccan/Pagan Inmate Class' rights as set forth in herein.

      (d)     Issue permanent injunctive relief restraining defendants and their officers, agents, directors, successors, employees, attorneys, or representatives from further violations of the First Amendment to the United States Constitution, Article 1, §4 of the Constitution of the State of California, RLUIPA, Title VII, FEHA and the other statutes and laws referenced herein as the subject of Plaintiff McCollum and the Wiccan/Pagan Inmate Class' claims for relief, including but not limited to enjoining defendants from policies, practices, actions, and omissions such as those alleged herein, and requiring the establishment of appropriate and effective means to prevent future such violations;

      (e)     Retain jurisdiction over defendants until such time that the Court is satisfied that defendants' unlawful policies, practices, acts and omissions no longer exist and will not recur;

      (f)     Award Plaintiff McCollum compensatory damages for his expenditures and for lost wages, benefits and seniority for his time serving as Wiccan chaplain to the inmates of California correctional facilities;

1            (g)     Award of costs including reasonable attorneys' fees pursuant to 42 U.S.C.

2                        § 1988, Title VII, and RLUIPA against each defendant jointly and

3                        severally, or apportioned in the discretion of the court for all counts;

4            (h)     Award punitive damages against each defendant for a sum to be proven at

5                        trial;

6            (i)      Award such other and further relief as this Court deems just and proper.

7                                  **REQUEST FOR JURY TRIAL**

8          Plaintiff McCollum and the Wiccan/Pagan Inmate Class request a jury trial.

9

10    Dated: December 21, 2005                RESPECTFULLY SUBMITTED,

11                                       JONES DAY

12

13                                       By:/s/_____

14                                            Caroline N. Mitchell

15                                   Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28