IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK M. McCOLLUM, et al., | No. C 04-03339 CRB |
| Plaintiffs, | **MEMORANDUM AND ORDER** |
| v. | |
| THE STATE OF CALIFORNIA, et al., | |
| Defendants. | |

This lawsuit involves the Wiccan religion and the California Department of Corrections ("CDC"). Now pending for decision is defendants' motion to dismiss.

**BACKGROUND**

Plaintiff Patrick McCollum, who is a Wiccan[1] clergyman, became a volunteer chaplain at CCI Tehachapi in January 1998. In February 2000, McCollum served as a volunteer, non-salaried Wiccan chaplain for all 33 CDC correctional institutions. McCollum alleges that the State of California has a policy that salaried clergy positions in the CDC correctional institutions are reserved only for members of five religions: Protestant, Catholic, Jewish, Muslim and Native American (the "Five Faiths Policy"). On various

---

[1] This Memorandum and Order uses the term "Wiccan" to refer broadly to "faith groups consisting of Wiccans, Goddess worshippers, Neo-Pagans, Pagans, Norse Pagans (and any other ethnic designation), Earth Religionists, Old Religionists, Druids, Shamans, Asatrus, and those practicing in the Faery, Celtics, Khemetic, Gardnerian, Church of All Worlds, Reclaiming, Dianic, Alexandrian, Iseum of Isis, Reconstructionist, Odinist or Yoruban Traditions, and other similar nature-based faiths." Third Amendment Complaint at p. 3 n.1.

occasions in 1999, 2002, and 2003, McCollum inquired about receiving an application for a chaplain position and spoke with a number of CDC former and present employees. Defendants informed him that he was ineligible to apply for a salaried chaplain position because he is a Wiccan and the State's policy limits salaried positions to clergy of the Five Faiths.

## PROCEDURAL HISTORY

McCollum originally filed this lawsuit as a pro se plaintiff against various CDC defendants. After the Court granted in part defendants' motion to dismiss, McCollum, still proceeding pro se, filed a First Amended Complaint. McCollum retained counsel and successfully moved to amend the complaint to add eight Wiccan inmate plaintiffs. The Court subsequently stayed all discovery pending resolution of defendants' new motion to dismiss and ordered plaintiffs to file an amended complaint which separates McCollum's claims from the inmates' claims.

In the Third Amended Complaint the inmates make section 1983 claims for violation of: (1) the Religious Land Use and Institutional Persons Act ("RLUIPA"), (2) Free Exercise of Religion Clause, (3) the Establishment Clause, (4) the Equal Protection Clause, and (5) the California Constitution. McCollum makes the same claims, and in addition makes a claim for retaliation for exercising his free speech rights. Defendants now move to dismiss the Third Amended Complaint on various grounds: (1) failure to exhaust prison remedies, (2) statute of limitations, (3) standing, (4) failure to state a claim, and (5) qualified immunity.

At oral argument on July 7, 2006, the Court ordered the parties to conduct discovery and file a new motion on the inmates' exhaustion of administrative remedies; exhaustion is a threshold issue the Court must resolve before addressing the merits of the inmates' claims. Accordingly, this Memorandum and Order addresses only defendants' motion to dismiss McCollum's claims. After carefully considering the papers filed by the parties, and having had the benefit of oral argument and letter briefs filed after argument, the Court GRANTS defendants' motion in part and DENIES the motion in part.

//

**DISCUSSION**

**A.   Religious Land Use and Institutionalized Persons Act ("RLUIPA")**

RLUIPA provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §2000cc-1(a)(1)-(2). The Act provides for judicial relief as follows:

> (a) Cause of action
>
> A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution.
>
> (b) Burden of persuasion
>
> If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of [RLUIPA], the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

42 U.S.C. § 2000cc-2(a) & (b). An inmate may not sue under RLUIPA without first exhausting administrative remedies. <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 723 (2005).

Defendants move to dismiss McCollum's RLUIPA claim on the ground that he is not a "person confined to an institution." McCollum responds that he has Article III standing because he has been injured by the burden on the Wiccan inmates: the burden on the inmates' free exercise of religion by failing to provide them with a paid chaplain means that McCollum has been unable to obtain a paid chaplain position with the CDC. <u>See</u> 42 U.S.C. § 2000cc-2(a).

McCollum's argument contradicts the plain language of RLUIPA. First, he is not a person confined to an institution. 42 U.S.C. §2000cc-1(a). Second, the Act provides that it is limited to claims brought by those on whom the burden is placed. In the burden of persuasion section the Act provides that the "*plaintiff* shall bear the burden of persuasion on

3

whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the *plaintiff's* exercise of religion." 42 U.S.C. § 2000cc-2(b) (emphasis added). This section demonstrates that under the Act *plaintiffs* are limited to those whose free exercise of religion is burdened by the challenged government policy. It is thus unsurprising that McCollum is unable to identify any court that has allowed a non-institutionalized person to make a RLUIPA claim under the above section.

McCollum claims that the inmates'–not his–free exercise of religion is burdened by the CDC's failure to pay for Wiccan chaplains. Plaintiffs' Opp. at 19 ("McCollum contends that by instituting a Five Faith Policy that is not based on objective, content-neutral criteria, defendants impose a substantial burden on the *Inmates'* religious exercise in all aspects of prison religious life") (emphasis added). As he does not and cannot allege that the Five Faith Policy burdens his free exercise of religion, his RLUIPA claim fails as a matter of law.

### B.    Free Exercise of Religion Clause

McCollum also makes a claim for violation of his First Amendment right to the free exercise of his religion. He contends that his constitutional right to exercise his religion was denied when certain defendants refused to allow him access to prisons to minister the Wiccan inmates. Defendants denied him access even though he was a "credentialed" prison volunteer chaplain and these defendants had been informed by the CDCR Director's Office that McCollum is an approved volunteer chaplain. Third Amended Complaint ¶¶ 97-105.

McCollum does not cite any case that suggests that the First Amendment Free Exercise of Religion Clause gives him the constitutional right to minister in the prisons. The CDC does nothing to inhibit the practice of his religion outside the prison gates. The CDC's alleged refusal to allow McCollum to minister to the Wiccan inmates may burden the inmates' free exercise rights, but it does not burden McCollum's rights.

In O'Malley v. Brierley, 477 F.2d 785 (3d Cir. 1973), the Third Circuit rejected a similar claim:

> [T]here is no principle in the law granting to clerics an absolute right to enter a prison, and Fathers O'Malley and Taylor have no constitutional right to enter Western Penitentiary. Thus, the priests' complaint that they have been denied fundamental First Amendment rights under the Free Exercise Clause clearly

4

misses the mark because no such rights exist in this context. It must unalterably follow that the state cannot be charged with denying that which does not exist.

Id. at 793. The court noted, however, that "[t]o find that these priests possess no constitutional right to visit the inmates at Western Penitentiary is not, of course, to say that the inmates may not possess a right to have the priests visit them." Id. at 795. In other words, the inmates' right to the free exercise of religion may be implicated by the State's alleged obstruction of McCollum from visiting the prisons even if McCollum does not have such a right.

McCollum's only response to O'Malley is to assert that it was undermined by Pell v. Procurnier, 417 U.S. 817, 822 (1974). Pell held those "challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system." Plaintiffs' Opp. at 16 (quoting Pell). Pell, however, involved First Amendment speech rights asserted by *prisoners*; it in no way casts doubt on O'Malley's holding that *clerics* do not have a First Amendment right to minister to prisoners. As McCollum has not articulated how his right to the free exercise of religion has been burdened by defendants, this claim, too, fails.

C.   **Equal Protection Clause/Establishment Clause**

McCollum does not separately analyze his Equal Protection and Establishment Clause claims, but the Court will do so here.

   1.   **Equal Protection Clause**

To succeed on his equal protection claim, McCollum must prove that defendants treated him different from other similarly situated persons. See Dillingham v. I.N.S., 267 F.3d 996, 1007 (9th Cir. 2001).

McCollum's equal protection claim can be divided into two types: (1) he is denied equal protection because the State does not have a paid position for a Wiccan chaplain, and (2) he is denied equal protection because the State treats him different from other prison-sanctioned ministers by denying him access to prisons and other discriminatory treatment (apart from the lack of a paid position).

5

The second theory states a claim. McCollum alleges he is an "approved" volunteer minister and had been issued a state-wide security clearance. He further alleges that the prison system recognizes the Wiccan faith. Nonetheless, on several occasions certain prison officials denied McCollum access to the Wiccan inmates and have made false accusations of misconduct against him, all because he is a Wiccan. See, e.g., Third Amended Complaint ¶ 141(b), (g). Even though not explicitly alleged, the implicit inference from these allegations is that defendants treated him different from other similarly situated persons, that is, approved clergy. At oral argument McCollum confirmed that he intends such an inference from his allegations. As the facts surrounding this claim have not been developed, the Court cannot yet determine whether defendants are entitled to qualified immunity.

McCollum's first theory is problematic because McCollum is not similarly situated to those persons that have paid positions, that is, Catholic, Protestant, Jewish, Muslim and Native American clergy. He is not hired for the paid positions because he does not meet the qualifications to minister to inmates of those faiths. McCollum's real complaint, then, is that the State pays for chaplains for inmates of those five religions, but does not pay for chaplains for Wiccan inmates.

It is not reasonably disputed that the State adopted the Five Faiths Policy to accommodate the religious beliefs of inmates of those faiths. Defendants' Request for Judicial Notice, Exh. B; Duffy v. State Personnel Board, 232 Cal.App.3d 1, 12-13 (1991). Whether the State's decision not to also pay for a Wiccan chaplain is constitutional depends on whether the Wiccan inmates' religious beliefs require such an accommodation. As the United States Supreme Court has stated: not "every religious sect or group within a prison–however few in number–must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments." Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972); Allen v. Toombs, 827 F.2d 563, 568-69 (9th Cir. 1987) (following Cruz); see also

Al-Alamin v. Gramley, 926 F.2d 680, 687 (7th Cir. 1991) (holding that prison system was not required to pay for a full-time Muslim cleric; instead, prison officials must simply give inmates a reasonable opportunity to practice their faith); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993) (holding that constitution did not require prison to provide inmate with an Orthodox Rabbi); Johnson-Bey v. Lane, 863 F.2d 1308, 1312 (7th Cir. 1988) (noting that the free exercise of religion rights of inmates may require prison officials to employ chaplains, but that the officials "need not employ chaplains of each and every faith to which prisoners might happen to subscribe"); Duffy, 232 Cal.App.3d at 13 n.7 ("Paying money to prison chaplains of some faith but not others has been held not to be an unconstitutional establishment of religion").  Therefore, McCollum cannot prevail on his "paid position" equal protection claim unless and until a court finally concludes that the Wiccan inmates' rights to the free exercise of religion require the State to pay for a Wiccan minister, or at least until a court concludes that the inmates' rights otherwise require the State to hire non-denominational ministers.

McCollum, however, has no standing to challenge the Five Faith Policy based on a violation of the inmates' constitutional rights.  Powers v. Ohio, 499 U.S. 400, 410 (1991) ("a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or third parties"); Allen v. Wright, 468 U.S. 737, 751 (1984) (stating that prudential standing principles impose a "general prohibition on a litigant's raising another person's legal rights").  This conclusion is especially warranted where, as here, the inmates are plaintiffs in this very lawsuit and make exactly the challenge that McCollum wishes to make on their behalf.  See Powers, 499 U.S. at 410 (in order for a plaintiff to have standing to assert a third-party's rights "there must exist some hindrance to the third party's ability to protect his or her own interests").

Plaintiffs' letter brief submitted after oral argument does not alter the above analysis.  None of the cases cited by plaintiffs suggests that McCollum–a non-inmate--may challenge the Five Faith Policy under the Equal Protection Clause.  Accordingly, this claim fails.

//

7

### 2. Establishment Clause

McCollum's Establishment Clause theory is that, while the State may pay for chaplains for some religions and not others, the State cannot use discriminatory reasons for choosing some religions over others. In McCollum's view, there are more Wiccan inmates than Jewish inmates so some discriminatory reason, such as hostility to pagan religions, must animate the State's decision as to which religions it will sponsor financially.

The first question is whether McCollum has standing to make such a claim. He contends that, at a minimum, he has standing as a taxpayer to challenge the State's policy. In Flast v. Cohen, 392 U.S. 83 (1968), the Supreme Court held that taxpayers have standing to challenge the disbursement of government funds under the Establishment Clause. To have such standing a plaintiff must demonstrate (1) "a logical link between [his] status [as a taxpayer] and the type of legislative enactment attacked," and (2) "a nexus between that status and the precise nature of the constitutional infringement alleged." 392 U.S. at 87, 102-03. The State does not appear to dispute McCollum's taxpayer standing as McCollum is a California taxpayer.

The second question is whether McCollum states a claim. Defendants argue that the Establishment Clause claim fails as a matter of law because by paying for Jewish, Catholic, Protestant, Muslim and Native American inmates the State is merely accommodating the religious needs of inmates of those faiths. The Supreme Court "has long recognized that the government may . . . accommodate religious practices . . . without violating the Establishment Clause." Cutter, 544 U.S. at 713 (internal quotation marks and citation omitted). "[T]here is room for play in the joints between the Free Exercise and Establishment Clauses, allowing the government to accommodate religion beyond free exercise requirements, without offense to the Establishment Clause." Id. (internal quotation marks and citation omitted). "At some point, [however], accommodation may devolve into 'an unlawful fostering of religion.'" Id. at 714 (internal quotation marks and citation omitted); see also Duffy, 232 Cal.App.3d at 23 (Blease, P.J., concurring) ("The state may

not discriminate among religions in the payment of chaplains as, for example, by choosing to pay chaplains only from established denominations").

The Court cannot resolve the Establishment Clause claim on a motion to dismiss. McCollum alleges that the State's policy is arbitrary and discriminatory and the Court must accept such allegation as true at this stage in the litigation. Accordingly, McCollum's taxpayer-standing Establishment Clause claim survives.

**D.     Title VII and FEHA**

McCollum also makes Title VII and FEHA claims arising from the State's refusal to hire him as a paid chaplain. Defendants respond that McCollum is not qualified for the paid positions because he is not trained in the Catholic, Protestant, Muslim, Jewish, or Native American faiths and the State's requiring paid chaplains to meet such qualifications is a bona fide occupational qualification ("bfoq") reasonably necessary to the normal operation of that particular business or enterprise. 42 U.S.C. § 2000e-2(e)(1).

As explained above, prison officials may pay for chaplains of particular faiths to minister to inmates of those faiths. See supra at ¶. 6-7. McCollum cannot reasonably dispute that to require one to be a Roman Catholic accredited priest in order to, for example, provide communion to Catholic inmates, is a BFOQ. See Duffy, 232 Cal.App.3d at 21. Once again, McCollum's real dispute is with defendants' decision not to also provide a paid Wiccan chaplain. Whether defendants must provide for such a position, or must eliminate all the paid chaplain positions for certain faiths in favor of generic ministers, depends--not on any rights of McCollum--but rather on the inmates' rights. To put it another way, to resolve McCollum's Title VII claim in his favor, the Court would have to rule that the State must provide a paid Wiccan minister, or that its paid positions must be for generic chaplains to minister to all inmates. Such a ruling could only be made if the Court concludes that the *inmates'* constitutional rights require such a remedy. As this discussion shows, McCollum's Title VII and FEHA claims are therefore premature and must be dismissed without prejudice to being made when and if the State's policy is found unlawful because it violates the

9

Wiccan inmates' rights. See Plaintiffs' Opp. at 25 (noting that "an *unconstitutional* bfoq does not defeat a claim of discrimination") (emphasis added).

McCollum's reliance on Rasul v. District of Columbia, 680 F.Supp. 436 (D.D.C. 1988) is misplaced. There the prison refused to hire the plaintiff Muslim chaplain because he was not a Protestant minister even though the prison's chaplains' duties did not involve serving the specific needs of Protestant inmates. Id at 438; see also id. at 440-41 ("Conspicuously absent from the vacancy announcement's list of specified duties is any suggestion that chaplains are to preside over all services within their jurisdiction, or that their activities are governed by their denominational preferences"). Moreover, after refusing to hire the plaintiff because he was not a Protestant, the prison changed its requirements to eliminate the Protestant minister qualifications without changing the chaplains' job description. Id. at 441. In light of these facts, the court held that being a Protestant minister was not a bfoq of the prison's chaplain positions. Id.

Here, in contrast, the specific job descriptions, of which this Court may take judicial notice, demonstrate that being an accredited minister of one of the Five Faiths is a bfoq. For example, the job duties of the Native American chaplain include conducting "Native American spiritual ceremonies including" the drum, tobacco, and revitalization ceremonies, and other faith-specific activities." Defendants' Request for Judicial Notice, Exh. B at p. 9. Unlike the plaintiff in Rasul, McCollum does not contend that he could provide such services. Again, as the Court has repeatedly stated, McCollum's dispute is with the State's decision to provide such services to inmates of certain faiths but not to Wiccan inmates. He does not have standing to make such a challenge. See Duffy, 232 Cal.App.3d at 15 n.10 ("it is not the role a job applicant to assert the uniquely personal rights to religious freedom of prison inmates").

**E.     California Constitution**

McCollum also makes a claim for violation of the California Constitution, Article 1, section 4, which provides in relevant part: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed . . . . The Legislature shall make no law

10

respecting an establishment of religion." As with his federal free exercise claim, McCollum has not and cannot allege that his right to the free exercise of religion is violated by the Five Faiths Policy. The Court's Establishment Clause analysis is also the same under the California Constitution, at least for the purpose of stating a claim. See Duffy, 232 Cal.App.3d at 9. Thus, McCollum has stated a claim for violation of the Establishment Clause of the California Constitution.

Duffy does not prove as a matter of law that the Five Faiths Policy does not violate the California Constitution. At this stage in the litigation the Court must accept as true McCollum's allegation that the State refuses to fund a Wiccan chaplain for discriminatory reasons, namely, animus toward the Wiccan religion and other non-mainstream faiths.

**F.     Free speech retaliation claim**

McCollum also alleges that in retaliation for his complaints about the Five Faiths Policy and the discriminatory treatment of Wiccan inmates, defendants obstructed McCollum's access to the Wiccan inmates and engaged in "ostracism, silent treatment, selective enforcement or the rules, poor reviews, defamatory statements to the media, intimidation, and harassment."  Third Amended Complaint ¶¶ 233-34. Defendants move to dismiss this claim on the ground that McCollum, as a cleric, does not have a First Amendment free exercise right to enter the prison; therefore, the argument goes, defendants can lawfully exclude him from the prisons even if they do so in retaliation for his speech.

McCollum states an actionable retaliation claim. The government cannot take action against a volunteer "who, while not a salaried employee, received a valuable benefit analogous to employment, because the volunteer exercised his First Amendment right to speak upon a matter of public concern." Hyland v. Wonder, 117 F.3d 405, 412 (9th Cir. 1997). "The opportunity to serve as a volunteer constitutes the type of government benefit or privilege the deprivation of which can trigger First Amendment [speech] scrutiny." Hyland v. Wonder, 972 F.2d 1129, 1135 (9th Cir. 1992).

Defendants' attempt to distinguish Hyland on the ground that McCollum does not allege that his volunteer position was terminated is unavailing. McCollum alleges that

11

defendants obstructed his access to the Wiccan inmates, that is, they hindered his ability to serve as a volunteer Wiccan chaplain. Defendants do not cite any case that suggests that at this stage in the litigation, and with these allegations, the Court could conclude that McCollum cannot state a First Amendment retaliation claim as a matter of law. Nor are defendants entitled to qualified immunity. <u>Hyland</u>, 117 F.3d at 412. This claim survives defendants' motion to dismiss.

## CONCLUSION

McCollum may not bring section 1983 claims based on violations of the Wiccan inmates' rights. McCollum recognized this flaw in his complaint when he added eight Wiccan inmates as plaintiffs. Accordingly, defendants' motion to dismiss McCollum's RLUIPA, free exercise, equal protection (salaried chaplain), Title VII, FEHA, and California Constitution free exercise claim is GRANTED without leave to amend, although the Title VII and FEHA claims are dismissed without prejudice. Defendants' motion to dismiss McCollum's federal and state Establishment Clause taxpayer standing claims, his equal protection claim based on defendants allegedly treating McCollum less favorably than other authorized ministers, and his First Amendment retaliation claim is DENIED.

Defendants' motion for a more definite statement is also DENIED. McCollum's allegations as to the claims remaining in this lawsuit are sufficiently alleged. Defendants will learn more details about the claims in discovery.

**IT IS SO ORDERED.**

Dated: August 8, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE