IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PATRICK M. McCOLLUM,

    Plaintiff,

v.

THE STATE OF CALIFORNIA, et al.,

    Defendants.

                                     /

No. C 04-03339 CRB

**MEMORANDUM AND ORDER**

Now pending before the Court are the parties' cross-motions for summary judgment on the Establishment Clause claims of plaintiff Patrick McCollum. After carefully considering the papers filed by the parties, and having had the benefit of oral argument, the Court concludes that Reverend McCollum does not have standing to raise the Establishment Clause claim he makes in this lawsuit.

**BACKGROUND**

Between 1930 and 1950 California used non-denominational chaplain positions to service state hospital patients, prison inmates, and residents of boys' homes. In 1957 the State Personnel Board ("SPB") abolished the generic chaplain positions and created three new denomination-specific paid chaplain classes: Protestant, Catholic, and Jewish. In 1981, at the request of the California Department of Corrections and Rehabilitation (CDCR), the SPB created a paid Muslim chaplain class. In 1989 a Native American Spiritual Leader paid

1  chaplain position was created as a result of a consent decree. Thus, the CDCR currently pays
2  for chaplains to service inmates of five faiths: Protestant, Catholic, Jewish, Muslim, and
3  Native American ("the Five Faiths" or "the Five Faiths Policy").

4  Plaintiff Patrick McCollum is a Wiccan[1] clergyman who became a volunteer chaplain
5  at the California Corrections Institution ("CCI") Tehachapi in January 1998. By February
6  2000, McCollum served as a volunteer, non-salaried Wiccan chaplain for all 33 CDCR
7  correctional institutions. On various occasions in 1999, 2002, and 2003, McCollum inquired
8  about receiving an application for a paid chaplain position and spoke with a number of
9  CDCR personnel. Defendants informed McCollum that he was ineligible to apply for a
10 salaried chaplain position because he is a Wiccan and the CDCR limits salaried positions to
11 clergy of the Five Faiths.

12 McCollum originally filed this lawsuit as a pro se plaintiff against various CDCR
13 defendants. The gravamen of his complaint was that the CDCR discriminates against
14 Wiccan inmates and the CDCR's refusal to hire McCollum as a paid chaplain is an example
15 of that discrimination. After the Court granted in part defendants' motion to dismiss for,
16 among other reasons lack of standing, McCollum retained counsel and successfully moved to
17 amend his complaint to add eight Wiccan inmate plaintiffs.

18 The Court subsequently dismissed McCollum's federal civil rights claims that are
19 based on violations of the Wiccan inmates' rights. McCollum's claims remaining in this
20 lawsuit are his federal and state Establishment Clause taxpayer standing claims, his equal
21 protection claim based on defendants allegedly treating him less favorably than other
22 authorized ministers, and his First Amendment retaliation claim. The parties have filed
23 cross- motions for summary judgment on the Establishment Clause claims, and defendants
24 have filed a separate motion for summary judgment on McCollum's equal protection and

---

[1] This Memorandum and Order uses the term "Wiccan" to refer broadly to "faith groups consisting of Wiccans, Goddess worshipers, Neo-Pagans, Pagans, Norse Pagans (and any other ethnic designation), Earth Religionists, Old Religionists, Druids, Shamans, Asatrus, and those practicing in the Faery, Celtics, Khemetic, Gardnerian, Church of All Worlds, Reclaiming, Dianic, Alexandrian, Iseum of Isis, Reconstructionist, Odinist or Yoruban Traditions, and other similar nature-based faiths." Third Amendment Complaint at p. 3 n.1.

2

First Amendment claim. This Memorandum and Order addresses the cross-motions for summary judgment on the Establishment Clause claims.

## DISCUSSION

Defendants move for summary judgment on the ground that McCollum does not have standing to make an Establishment Clause challenge to the "Five Faiths Policy." They also argue that McCollum's claim fails because the evidentiary record compels the conclusion that Wiccan inmates do not require a paid chaplain while inmates of the other five religions do. McCollum responds that he has standing as a state taxpayer and as a Wiccan minister seeking employment with the CDCR. McCollum contends further that he is entitled to judgment as a matter of law because it is undisputed that the CDCR did not apply neutral criteria in determining which religious beliefs to accommodate with a paid chaplain.

### I.  Standing

McCollum must demonstrate that he has standing "for each claim he seeks to press" and for "each form of relief sought." <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 352 (2006) (internal citation and quotation marks omitted). Thus, to resolve whether McCollum has met his standing burden the Court must first identify the contours of McCollum's Establishment Clause claim. <u>See</u> <u>Allen v. Wright</u>, 468 U.S. 737, 752 (1984) ("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.").

#### A.  McCollum's Establishment Clause Challenge

As this Court has previously observed, it is well established that prisons may accommodate the religious beliefs of inmates by paying for chaplains of certain faiths but not others. <u>McCollum v. State of California</u>, 2006 WL 2263912 *4 (N.D. Cal., April 8, 2006). McCollum nonetheless contends that the CDCR's Five Faiths Policy violates the Establishment Clause because the State has not applied neutral, nondiscriminatory criteria in determining which faiths to fund.

Defendants insisted in their initial moving papers that they considered six neutral factors to determine whether a paid chaplain for a particular religion is warranted: (1)

3

1  liturgical needs, (2) the numbers of the group, (3) existing and alternative accommodation
2  means, (4) security, (5) cost, and (6) other practical factors related to institutional operational
3  needs.  In defendants' opposition to McCollum's motion for summary judgment, however,
4  defendants withdrew any arguments or statements that suggest that defendants have applied
5  the six neutral criteria in the past:

> CDCR has never analyzed or applied the six criteria . . . including liturgical needs and numbers of inmates of a particular faith group, in determining whether any of the five existing chaplain classifications are warranted, whether a new paid chaplain classification is warranted for pagans or for any other faith group, and/or whether to employ chaplains of any faith group

Docket No. 319 at p. 1 n.2.  Defendants explain that in the future they *will apply* the six neutral criteria whenever the need appears, and as part of this litigation they have done so and have determined that a paid Wiccan chaplain is not required.

McCollum argues that in light of defendants' admission that they have never applied neutral criteria to determine which faiths require the accommodation of a paid staff chaplain, the CDCR's Five Faiths Policy violates the Establishment Clause.  At oral argument he explained that he does not assert that the State cannot accommodate the religious practices of the Five Faiths by paying for clergy of those faiths.  December 12, 2008 Transcript at 8, 17-18 (Docket No. 362).  And he does not contend, nor offer any evidence, that the CDCR will be unable to constitutionally justify its compensation of chaplains of the Five Faiths.  Rather, his claim is more of a "process" claim: the Five Faiths Policy violates the Establishment Clause because the CDCR did not utilize a neutral process in determining which faiths to fund, even if in the end a neutral process will lead to the same result.  See Plaintiff's Reply (Docket No. 355) at 6.  He thus seeks injunctive relief requiring the CDCR to apply neutral criteria to determine which religious beliefs require a paid chaplain.

McCollum also makes a broader claim: if the CDCR applies neutral criteria it will find that Wiccan inmates require a paid chaplain in order for their religious beliefs to be reasonably accommodated or, at the very least, Wiccan inmates require a paid chaplain as much as Jewish inmates do (according to McCollum's evidence Jewish inmates are fewer in number than Wiccans).  Docket No. 362 at 7, 15, 18.

4

The question, then, is whether McCollum has standing to prosecute either of those claims. McCollum posits that he has standing because he seeks employment as a paid CDCR Wiccan chaplain or, in the alternative, because he is a state taxpayer.

### B.     Traditional Standing

To satisfy the Constitution's standing requirements "a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000). In addition to these Article III standing requirements, a federal court's exercise of jurisdiction is also limited by prudential considerations. Bennett v. Spear, 520 U.S. 154, 162 (1997). One of these prudential considerations is "the general prohibition on a litigant's raising another person's legal rights." Allen v. Wright, 468 U.S. 737, 751 (1984).

The Court previously ruled that McCollum does not have standing to bring an equal protection claim challenging the Five Faiths Policy because such claim rests on the rights of third parties, namely, the Wiccan inmates. See McCollum, 2006 WL 2263912 at *4-5. The same analysis applies to McCollum's standing to challenge the Five Faiths Policy under the Establishment Clause. To the extent McCollum seeks to have the CDCR perform a certain analysis–a neutral process to determine which, if any religious beliefs, necessitate a salaried chaplain position–McCollum has not suffered any injury in fact. He is not an inmate who is served, or not served, by salaried chaplains. His "injury in fact" argument is that the creation of a paid Wiccan chaplain position would give him the opportunity to apply for a salaried position with the CDCR. Plaintiff's Opp. (Docket No. 336) at 5. But success on this claim would not necessarily give him that opportunity; on this claim McCollum seeks only an order directing the CDCR to apply neutral criteria and not a further order specifying that the CDCR must fund a Wiccan chaplain. Thus, McCollum has not suffered an "injury in fact" sufficient

to convey standing to challenge the CDCR's determination of which inmate religious beliefs to accommodate with salaried chaplains.

Nor does McCollum have such standing with respect to his claim that the CDCR must fund a Wiccan chaplain. It is wholly speculative whether the CDCR would hire McCollum as a salaried Wiccan chaplain. Moreover, and most importantly, as the Court previously noted in its order finding that McCollum lacks standing, whether the CDCR must pay for a Wiccan chaplain depends entirely on the needs of the Wiccan inmates–that analysis has nothing to do with McCollum. McCollum, 2006 WL 2263912 at *4-5. He is, in effect, bringing the claim on behalf of the Wiccan inmates; prudential standing concerns do not allow him to do so. Allen, 468 U.S. at 751.

### B.     Taxpayer Standing

McCollum also contends that he has standing to challenge the Five Faiths Policy because he pays taxes to the State of California and taxpayer dollars are used to fund the chaplain positions for the Five Faiths. The general rule is that both federal and state taxpayers do not have standing under Article III to challenge a particular expenditure of funds simply because they are taxpayers. Arakaki v. Lingle, 477 F.3d 1048, 1064 (9th Cir. 2007). The Supreme Court "has hesitated to recognize federal taxpayer standing because an injunction prohibiting spending on any given program may only remotely affect the parties' tax bill and redress the alleged injury." Id. at 1062.

In Flast v. Cohen, 392 U.S. 83 (1968) the Supreme Court recognized a narrow exception to the general rule against taxpayer standing. Under that exception, a plaintiff has standing to challenge a law authorizing the use of federal funds in a manner that allegedly violates the Establishment Clause; that is, the expenditure of government funds in violation of the Establishment Clause satisfies the Article III requirement of an injury. See Doe v. Madison School Dist. No. 321, 177 F.3d 789, 793 (9th Cir. 1999) (holding that for Establishment Clause taxpayer standing to exist the plaintiff's injury must be financial; namely, a financial injury resulting from a government's expenditure of tax revenues).

Defendants argue that no such exception to the general rule against taxpayer standing applies to *state* appropriations of state funds. Since the CDCR chaplain positions are funded by state legislative enactments--not federal money--defendants contend that taxpayer standing does not exist here. Defendants' argument is foreclosed by binding Ninth Circuit precedent. In Doe v. Madison School Dist. No. 321, 177 F.3d 789, 793 (9th Cir. 1999), the court held that to have standing to challenge a non-federal governmental expenditure the taxpayer must demonstrate that the government spends "a measurable appropriation or disbursement of [state] funds occasioned solely by the activities complained of." Id. at 794 (internal quotation marks and citation omitted); see also id. (explaining that the Supreme Court's decision in "Doremus 'stands for the proposition that a state or municipal taxpayer does not have a direct enough interest for his suit to constitute an article III case or controversy unless the activity challenged involves an expenditure of public funds which would not otherwise be made.'") (quoting Taxpayers' Suits, A Survey and Summary, 69 Yale L.J. 895, 922 (1960)).

Defendants appear to contend that the Supreme Court's decision in DaimlerChrysler Corp. v. Cuno, 547 U.S. 332 (2006) overrules the long-line of Ninth Circuit cases allowing state taxpayer standing for Establishment Clause challenges. Cuno, however, involved a *commerce clause* challenge; the Court, in essence, refused to extend Flast to commerce clause challenges. Id. at 347. Defendants do not cite any case which suggests that after Cuno there is no longer state taxpayer standing for certain Establishment Clause challenges. Indeed, the Eighth Circuit recently reaffirmed that such standing still exists:

> There is . . . "a narrow exception to the general constitutional prohibition against taxpayer standing." The exception provides that " 'a taxpayer will have standing consistent with Article III to invoke federal judicial power when he alleges that congressional action under the taxing and spending clause is in derogation of' the Establishment Clause." *This exception also applies to state taxpayer challenges of state expenditures contrary to the Establishment Clause.*

Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc., 509 F.3d 406, 420 (8th Cir. 2007) (emphasis added).

7

McCollum has offered evidence that the paid chaplain positions are specifically funded each year through the state budget process with a separate line item that must be approved by the California legislature.  Thus, to the extent McCollum seeks to prevent the expenditure of funds to pay for chaplains for the five religions as a violation of the Establishment Clause he has suffered an actual injury.

He has not suffered such a financial injury, however, because he does not seek to stop the funding of paid chaplains for any of the Five Faiths; instead, he seeks a re-evaluation of whether funding is appropriate and, in fact, takes no position on whether funding of any of the Five Faiths should not occur.  This position is unsurprising given that the gravamen of his complaint has always been that the CDCR should pay for a salaried Wiccan chaplain.  Thus, he does not seek to stop the expenditure of state funds, he seeks additional state funds or, at best, the transfer of funds from one position to another.  For example, a court order directing the CDCR to perform a review of all of the religions practiced by its inmates and then using neutral criteria to determine which religions should be accommodated with a paid chaplain does not redress an injury to McCollum's pocket book; to the contrary, such an order will *increase* the tax burden on McCollum and his fellow taxpayers.  An order directing the CDCR to pay for a Wiccan chaplain will similarly increase the tax burden.  Accordingly, McCollum's status as a taxpayer does not give him standing to seek such relief.  Cf. Reimers v. State of Or., 863 F.2d 630 n.4 (9th Cir. 1988) (noting that plaintiff did not have taxpayer standing to complain that a particular religion was represented on the prison's chaplain staff).

McCollum does not cite, and the Court is not aware, of any case in which a court held that Establishment Clause taxpayer standing applied when the plaintiff was not seeking to eliminate the allegedly unconstitutional program.  The successful taxpayer standing cases all involve lawsuits to stop the expenditure of federal, state or municipal funds; thus, the plaintiff's injury–the financial impact of the expenditure of those funds–is redressed by the lawsuit.  See, e.g., PLANS, Inc. v. Sacramento City Unified School Dist., 319 F.3d 504, 506 (9th Cir. 2003) (plaintiff taxpayer sued under the Establishment Clause to stop the funding of Waldorf schools); Doe, 177 F.3d at 789 (plaintiff taxpayers sued to stop prayer at graduation

ceremony); Cammack v. Waihee, 932 F.2d 765, 772 (9th Cir. 1991) (plaintiff taxpayers had standing to sue under the Establishment Clause to end a paid Good Friday holiday for municipal employees).

## CONCLUSION

A finding that a state taxpayer has standing to challenge the Five Faiths Policy is not required to ensure that the CDCR follows the Constitution's commands: Wiccan inmates themselves have standing to assert that the CDCR's failure to hire a Wiccan inmate violates their free exercise of religion rights as well as the Establishment Clause. See, e.g., Rouser v. White, 2008 WL 4283650 *4-5 (E.D. Cal. Sep. 16, 2008) (holding that the plaintiff Wiccan inmate had standing to make an Establishment Clause challenge to the CDCR's preference for the five faiths). The Court's holding here is merely that McCollum, who is not a CDCR inmate, does not have standing to insist that the CDCR apply neutral criteria to determine if it should fund a salaried Wiccan chaplain position to served CDCR inmates. Accordingly, defendants' motion for summary judgment on McCollum's Establishment Clause claim is GRANTED and McCollum's cross-motion is DENIED.

**IT IS SO ORDERED.**

Dated: February 13, 2009

_____
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2004\3339\orderremccollumestablishmentclause[1].wpd

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

G:\CRBALL\2004\3339\orderremccollumestablishmentclause[1].wpd    10

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2004\3339\orderremccollumestablishmentclause[1].wpd